IN RE THE ADOPTION OF RONALD D. DOVE, II, A MINOR, CAROL S. STAUFFER AND SAMUEL J. DOVE AND MYRTIE J. E. DOVE

[No. 1-677A125. Filed October 13, 1977. Rehearing denied January 3, 1978. Transfer denied February 16, 1978.]

*Robert J. Bremer, Calbert & Bremer,* of Greencastle, for appellant.

*Arch N. Bobbitt, Ruckelshaus, Bobbitt. & O'Connor,* of Indianapolis, *Rexell A. Boyd, Lyon & Boyd,* of Greencastle, for appellees.

## STATEMENT OF THE CASE

LOWDERMILK, J.—Intervenor-appellant Carol Sue Stauffer, the natural mother of Ronald D. Dove II, (Ronnie), appeals from the judgment of the trial court in an adoption proceeding wherein Carol's parental rights in regard to Ronnie were terminated because of her unjustifiable failure to communicate significantly with Ronnie for a period of more than one year,[1] and wherein the trial court approved the adoption of Ronnie by his parental grandparents, petitioners-appellees Samuel J. and Myrtie J. E. Dove.

## FACTS

Carol and Ronald D. Dove, Sr. (Ronald, Sr.) were married in 1965 and divorced in 1968. Ronald D. Dove, II (Ronnie) was born in June 1967. When Carol and Ronald, Sr. were divorced Carol, who was 20 years old at the time, was awarded custody of Ronnie. Carol remarried, and when her second marriage ended in failure a short time later, Carol, burdened with several personal, emotional, and economic problems, asked Samuel and Myrtie Dove in July 1969 to take care of Ronnie until she could get her life in order.

In the summer of 1969 the Doves were awarded temporary custody of Ronnie. Carol's life was still mixed up; she married a third time and that marriage ended without success. Finally, in 1971 Carol met a Swiss national named Oscar Stauffer who was a mechanical engineer. Carol and Oscar were married in 1973, and later had a son. While living in Switzerland Carol, with Oscar's help, brought equilibrium into her life.

In the summer of 1974 Carol returned to the United States and formally petitioned the trial court for custody of her son, Ronnie. The trial court denied her petition and ratified its 1969 order

---

1. See IC 1971, 31-3-1-6(g)(1) (Burns Code Ed., Supp. 1973).

which awarded custody to the Doves. Carol had to return to Switzerland without Ronnie.

What happened after Carol returned to Switzerland in 1974 is unclear because the evidence is conflicting. Carol asserts that she maintained contact with Ronnie by writing occasional letters, sending Christmas and birthday cards, and by phoning on two occasions. Carol further asserts that she was unable to return to America to visit Ronnie because of the expense, and because she developed complications during pregnancy prior to the birth of Oscar's and her second child. It was Carol's testimony that she never received any letters or phone calls from Ronnie or the Doves during the period of July 1974 to July 1976.

The Doves testified that Ronnie did not receive any letters, cards, phone calls or visits from Carol during the period of November 1974 to June 1976.

In July 1976 the Doves filed a petition, wherein they sought to adopt Ronnie. Carol did not consent to the adoption; she intervened in the proceeding and sought to obtain custody of Ronnie.

The trial court held a hearing to determine whether Carol had waived her right to withhold her consent by unjustifiably failing to communicate with Ronnie for more than one year.[2] After hearing the evidence the trial court determined that Carol did in fact abandon her son by unjustifiably failing to communicate with Ronnie for more than one year, and pursuant to IC 1971, 31-3-1-6(g)(1), *supra*, the court decreed that Carol's parental rights in regard to Ronnie were terminated.

## ISSUES

The issues which have been presented to this court for review are as follows:

1. Whether the trial court erred in terminating the parental rights of intervenor-appellant Carol S. Stauffer with respect to her son, Ronald D. Dove, II, in that the record does not clearly and indubitably show that Carol ever abandoned Ronnie, nor does

2. See IC 1971, 31-3-1-6(g)(1), *supra*.

it show that reasonable services, as required by IC 1971, 31-3-1-7(e) (Burns Code Ed., 1976 Supp.), which were designed to aid Carol in overcoming those problems which caused her to lose custody of Ronnie, were ever provided.

2.   Whether the trial court erred in granting the Doves' petition to adopt Ronnie in that the Doves failed to present by clear and indubitable evidence that they were sufficiently able to rear, support and educate Ronnie, and that the adoption would be in Ronnie's best interest.

## DISCUSSION AND DECISION

Issue One

It is Carol's contention that the trial court erred in terminating her parental rights with respect to Ronnie in that the court based its decision solely upon IC 1971, 31-3-1-6(g)(1), *supra*,[3] and did not receive evidence upon, nor consider the statutory requirements in IC 1971, 31-3-1-7(e), *supra*.[4]

The trial court was correct in holding that a finding of abandonment under IC 31-3-1-6(g)(1) is sufficient to extinguish parental

---

3.   IC 1971, 31-3-1-6(g)(1) reads as follows:

"(g) Consent to adoption is not required of:

(1) a parent or parents if the child is adjudged to have been abandoned or deserted for six [6] months or more immediately preceding the date of filing of the petition; *or a parent of a child in the custody of another person, if for a period of at least one [1] year he fails without justifiable cause, to communicate significantly with the child when able to do so* or he wilfully fails to provide for the care and support of the child when able to do so as required by law or judicial decree, or if the parent or parents have made only token efforts to support or to communicate with the child, *the court may declare the child abandoned by the parent or parents*; . . ." (Our emphasis)

4.   IC 1971, 31-3-1-7(e) reads in part:

"At the hearing on termination of parental rights, the person filling [filing] the petition shall show that reasonable services have, under he [the] circumstances, been provided to the parents or were offered and refused by the parents, which services were designed to aid the parents in overcoming the problems which originally led to the deprivation of physical custody. The effectiveness, if any, of the services, and that, despite the offer or utilization of the services, the problems which originally led to the deprivation of physical custody are still present must also be shown."

rights by operation of law. However, the trial court was not correct in holding that the procedural steps outlined in IC 31-3-1-7 do not apply to a hearing to determine whether or not there has been an abandonment by operation of law, pursuant to IC 31-3-1-6(g)(1).

We hold that the provisions of IC 31-3-1-7 contain the procedural steps which must be taken before a court can do away with the need for obtaining parental consent to an adoption, and thereby extinguish a parent's rights in his or her child. Therefore, in determining, as in the case at bar, that a child has been abandoned and, as a result, that the parent who abandoned the child need not consent to the adoption, the court must follow the procedures outlined in IC 31-3-1-7.

Carol contends that at the hearing on the termination of Carol's parental rights the Doves did not show, pursuant to IC 31-3-1-7(e), *supra,* that reasonable services had been rendered or offered which were designed to aid Carol in overcoming the problems which had originally led to the deprivation of her custody of Ronnie, nor did they show that the problems which originally led to the deprivation of physical custody were still present.

We hold that, under the circumstances in the case at bar, the trial court was correct in holding that the Doves had no duty to present evidence that reasonable aid had been given or offered to Carol or that the problems for which Carol was deprived of Ronnie's custody still existed.

Although the provisions of IC 31-3-1-7 must be followed in terminating parental rights and eliminating the need for notice of and consent to adoption under IC 31-3-1-6, the last paragraph of IC 31-3-1-7(e) applies only where a welfare or child adoption agency is seeking to terminate for any lawful reason the rights of a parent in a child.[5] The last paragraph

---

5. The last paragraph of IC 31-3-1-7(e) was added in 1975. See Acts 1975, P.L. 295 § 2, pp. 1642-43. Also in 1975 In Acts 1975, P.L. 295 §1, pp. 1639-40, IC 1971, 31-3-1-6(g)(7) and (8) (Burns Code Ed., 1976 Supp.) were added, and, as will be seen, such additions in IC 31-3-1-6(g)(7) and (8) correlate with the language of the last paragraph of IC 31-3-1-7(e). IC 31-3-1-6(g)(7) and (8) read as follows:

of IC 31-3-1-7(e) does not apply where, as in the case at bar, a parent has entrusted her child to the care of another and then abandons that child. It would be against reason and against human nature to require a foster family which had cared for a child for several years to offer services, which were designed to reunite a child with its natural parents, to a parent who, under the pertinent statute, had abandoned that child and showed little or no concern for its welfare. We must construe a legislative act in a logical and reasonable way. We cannot presume that the lawmakers intended an absurdity. See *In Re Adoption of Jackson* (1972), 257 Ind. 588, 277 N.E.2d 162. Therefore, we hold that the trial court did not err in refusing to receive evidence upon services rendered to Carol by the Doves and in refusing to apply the provisions of the last paragraph of IC 31-3-1-7(e) to the case at bar.

Carol contends that there was not sufficient evidence from which the court could find that her failure to communicate was unjustifiable. We do not agree. Even though Carol was far removed from Ronnie in distance, nevertheless, she could have maintained regular correspondence through letters and phone calls.

---

"(7) a parent or parents of a child who has been cruelly treated or neglected, if the child has been declared an abused, dependent or neglected child by the court of jurisdiction, and the parent or parents deprived of his custody for a period of two [2] years prior to the filing of a petition to terminate parental rights, if there has been little or no change in the environment from which the child was removed;

(8) the parent or parents of a child where the parent or parents suffer a disability because of the habitual use of alcohol, or any of the controlled substances in schedules I through V of IC 1971, 35-24.1 [35-24.1-2-4 — 35-24.1-2-12], except when the controlled substances are used as part of a medically prescribed plan, and, if the child has been declared an abandoned, abused, dependent or neglected child by the court, and the parent or parents deprived of his custody for a period of two [2] years continuously immediately prior to the filing of the petition for termination of parental rights. The parent or parents must have been deprived of custody of the child because of a disability as described in this chapter [31-3-1-1 — 31-3-1-12]. Petitioner shall be required to show that the disability renders the parent or parents unable to adequately care for and control the child."

When the last paragraph of IC 31-3-1-7(e) is read in conjunction with IC 31-3-1-6(g)(7) and (8), its meaning becomes very clear, that where a child has been taken from a parent because of that parent's cruelty to, abuse of, or neglect of the child, the agency responsible for the welfare of the child should try to help the parent overcome the problems which led to the deprivation of custody, prior to the termination of that parent's rights in the child.

We hold that there was sufficient evidence from which the court could find that Carol's failure to communicate was unjustifiable.

Carol contends that the trial court erred in considering Ronnie's best interest during the hearing to terminate Carol's parental rights and cites *In Re Bryant's Adoption* (1963), 134 Ind. App. 480, 189 N.E.2d 593, to support her contention. We point out, however, that since *In Re Bryant's Adotpion, supra,* was handed down in 1963, the Indiana legislature in Acts 1971, P.L. 421 § 2, pp. 1965-66, modified IC 1971, 31-3-1-7(c) (Burns Code Ed., 1976 Supp.) by adding the following:

". . . *When the court terminates parental rights under this chapter [31-3-1-1 — 31-3-1-12] its paramount concern shall be for the health, welfare and future of the child whose adoption is immediately contemplated or who in the future will hopefully be adopted.* The purpose of this chapter in regard to the termination of parental rights is to give to unfortunate children who have been bereft of love and parental care the benefits of a home, and of such parental care, and the law should receive a liberal construction to effect this purpose." (Our emphasis)

From IC 31-3-1-7(c) it is clear that not only must the court consider the best interest of the child in determining whether or not to terminate parental rights, but such should be of primary concern.

We hold that in light of the evidence and the pertinent law the trial court did not err in terminating Carol's parental rights because of her unjustifiable failure to significantly communicate with Ronnie for a period of more than one year.

Issue Two

Carol contends that the Doves did not sufficiently show that they could satisfactorily support, educate, and care for Ronnie, nor did they show that the adoption would be in Ronnie's best interest.

As an appellate court, we presume the trial court to be correct in its judgment, unless the record shows that the trial court clearly abused its decision making powers.[6]

---

6. See *First National Bank of Mishawaka v. Penn-Harris-Madison School Corp.* (1970), 255 Ind. 403, 265 N.E.2d 16, and *Atkinson v. Whipple* (1972), 154 Ind. App. 449, 290 N.E.2d 131.

In the case at bar we have been presented with nothing which would indicate that the trial court abused its discretion. In fact there is every indication that the Doves will continue to give Ronnie the same love, care, support, and education, which he has received from them for the past eight years.

Carol contends that the court erred in not admitting into evidence certain court dockets from her divorce with Ronald, Sr. and from a divorce between Ronald, Sr. and a woman which he had married before he married Carol. Carol attempted to show two things from these court dockets which were refused admission into evidence by the trial court: (1) That because the Doves had attempted to obtain custody of a child from the first marriage of Ronald, Sr. they had established a pattern of conduct wherein the Doves, as grandparents, would attempt to wrest custody of their grandchildren from those children's natural mothers, and (2) That the court dockets would show that Ronald, Sr. was not a responsible adult, and, therefore, the Doves were incapable of raising a male child to be a responsible adult. The trial court rejected such evidence because it was irrelevant. We agree.

It is doubtful that evidence that the Doves had attempted to obtain custody of a grandchild other than Ronnie could reasonably be interpreted to show a pattern of behavior. We hold that the court did not abuse its discretion in excluding such irrelevant evidence.[7]

We also hold that the court did not err in excluding evidence of the adult conduct of Ronald, Sr. because there are so many variables involved in producing the behavior of an adult human being that to look to that person's actions and to infer therefrom that his parents were good or bad would be to unjustly judge certain parents who have made every effort to raise a child to become a productive and worthwhile adult, but have failed because of that child's reluctance to follow his parents' guidance.

_____

7. Where a party attempts to introduce evidence of a similar act or transaction to prove that a certain act occurred, the admission of such evidence is within the discretion of the trial court. See *Murphy v. Indiana Harbor Belt Railroad Co.* (1972), 154 Ind. App. 103, 289 N.E.2d 167.

Evidence of such adult behavior is so unreliable that it becomes immaterial to the proving of certain assertions, as in the case at bar.

Therefore, in that we cannot weigh the evidence, nor judge the credibility of witnesses, we hold that the trial court did not err in finding that the Doves were capable of and willing to care for, support, and educate Ronnie, and that the adoption would be in Ronnie's best interest.

Carol also contends that the trial court erred in considering, in an adversary adoption proceeding, the preadoption report which had been prepared by the county welfare agency. It is correct that it is improper for the court to consider a preadoption welfare report in an adversary adoption proceeding.[8] However, we find no reversible error in the case at bar because there is no indication in the decree of judgment or in any of the court's statements which have been presented to us that the court did in fact consider the welfare report in making its decision. In a bench trial where inadmissible evidence has been admitted, it is presumed that the court did not consider such evidence where there exists other competent evidence from which the court could reach its decision.[9]

Carol contends that neither she nor her attorney were permitted to adequately examine the preadoption welfare report. The court made the following statement concerning Carol's examination of the welfare report:

"Show, the Court having allowed Mr. Bremer [Carol's counsel] to read a copy of the confidential summary in the office of the court reporter such objection is overruled." (Our insert)

In view of the court's statement that Carol's counsel was permitted to examine the welfare report, we find no error.

Judgment affirmed.

Robertson, C.J. and Lybrook, J. concur.

---

8. See *In Re Adoption of Jeralds* (1972), 152 Ind. App. 538, 284 N.E.2d 99.

9. See *In Re Adoption of Thornton* (1976), 171 Ind. App. 457, 358 N.E.2d 157.

## ON APPELLANT'S PETITION FOR REHEARING, APPELLEES' MOTION TO DISMISS OR IN THE ALTERNATIVE TO DENY APPELLANT'S PETITION FOR REHEARING

LOWDERMILK, J.— Appellant timely filed her petition for rehearing.

To this appellees timely filed their motion to dismiss or in the alternative to deny appellant's petition for rehearing.

Appellant's petition for rehearing does contain some argumentative statements with citations of authority. Appellees attacked appellant's petition for rehearing by filing their motion to dismiss or in the alternative to deny appellant's petition for rehearing.

The motion to strike urges this court to dispose of appellant's right for rehearing by this highly technical means.

Rules of Appellate Procedure, Appellate Rule 11, Rehearings and Transfer, so far as it pertains to this cause is in the words and figures as follows, to wit:

> "(A) Rehearings. Application for a rehearing of any cause may be made by petition, separate from the brief, signed by counsel, and filed with the clerk within twenty (20) days from rendition of the decision, stating concisely the reasons why the decision is thought to be erroneous. Such application may, if desired, be supported by briefs, but such briefs will not be received after the time allowed for filing the petition. Parties opposing the rehearing may file briefs within ten (10) days after the filing of the petition. No extension of time shall be granted for the filing of a petition for rehearing or any brief in connection therewith."

Appellees herein cite and rely on a case determined under the old Supreme Court Rule 2-22 which is identical to the present Rule above set out except that in the first line of Rule 2-22 the word "may" was "shall" and the last sentence on the new Rule was not a part of the old Rule 2-22.

In *Custer v. Mayfield* (1965) 138 Ind. App. 575 at 579, this court held at page 580, "It has been held by our courts that a petition

for rehearing must conform to the aforesaid Rule 2-22 and that it must not be an argumentative brief."

In the case of *City of Evansville, et al. v. Lehman* (1966), 138 Ind. App. 587, this court was presented with the same problem on petition for rehearing and again held that the petition for rehearing must conform to Rule 2-22 (Appellate Rule 11(A)) and that it must not be an argumentative brief.

While it is true that appellant's petition for rehearing was somewhat argumentative and did have citations of authority, it was accompanied by a brief containing argument and authorities in compliance with the Rule.

Our Supreme Court has held that where a party has made a good faith attempt to comply with the Rule that he should not lose his day in court on technical grounds only.

Thus we can best make our ruling on the motion to dismiss and the petition for rehearing by using the words of the late Judge Mote in *City of Evansville, et al. v. Lehman, supra*, at page 633, as follows:

"It is not our purpose to violate the provisions of any rule, yet we are faced with the general rule that, although rules are adopted for the benefit of the court as well as for the use and benefit of the parties upon which they safely may rely, we do not wish to assume an arbitrary power of dismissal which finally would dispose of the appeal. Hence, we hereby deny the petitions for rehearing, as well as appellee's petition for dismissal of said petitions for rehearing."

Our Supreme Court in the case of *Automobile Underwriters, Inc. v. Smith* (1961), 241 Ind. 302, 171 N.E.2d 823, in denying a petition to transfer from the Appellate Court at page 306 stated the following:

". . . Consistent with the purpose of the rule, alleged errors in the opinion, not supported by a concise statement of the reasons in support thereof, are considered waived. However, it is not necessary, as stated in the Dorweiler case, *supra*, that such reasons be supported by argument. In any event, however, if such reasons cannot be concisely stated, and it is

considered that extensive argument in support of alleged errors in the opinion is desired, such argument must be submitted *separate* from the petition." (Original emphasis)

Appellees' motion to dismiss appellant's petition for rehearing is denied. Appellees' alternative motion to deny appellant's petition for rehearing is considered. The court, having fully considered appellant's petition for rehearing and being duly advised in the premises, now denies said petition.

Robertson, C.J. and Lybrook, J. concur.

NOTE—Reported at 368 N.E.2d 6.