**In re the Termination of the Parental Rights of Henrietta M. JOHNSON, f/k/a Henrietta M. Capps.**

**Henrietta M. JOHNSON, Defendant-Appellant,**

v.

**Donald A. CAPPS, Plaintiff-Appellee.**

**No. 3–180A20.**

Court of Appeals of Indiana, Third District.

Jan. 27, 1981.

Rehearing Denied March 4, 1981.

---

Linda L. Long, Valparaiso University School of Law Clinical Program, Valparaiso, for defendant-appellant.

Arnold A. Coons, Jr., Portage, for plaintiff-appellee.

HOFFMAN, Judge.

Appellant, Henrietta M. Johnson, appeals from the trial court's order terminating her parental rights with respect to her natural daughter. Johnson raises the following four issues for review:

   (1) whether compliance with Indiana's Uniform Child Custody Jurisdiction Act is a prerequisite to the trial court's subject-matter jurisdiction;

   (2) whether Johnson was denied due process and equal protection by the trial court's denial of her request for a court appointed attorney;

   (3) whether the evidence is sufficient to establish Johnson's unjustifiable failure to communicate with her daughter; and

   (4) whether the court improperly considered the best interests of the child prior to a proper adjudication of Johnson's relinquishment of parental rights.

Johnson and appellee, Donald A. Capps, are the natural parents of Donna Lorraine Capps. Pursuant to a dissolution decree entered by the Porter Superior Court in 1975, Donna has been in the custody of her paternal grandparents in Illinois.

On March 1, 1979 Donald filed a verified petition for termination of the parental rights of Johnson pursuant to IC 1971, 31-3-1-7 (Burns Code Ed.) (repealed effective October 1, 1979). Johnson, a California resident was served by certified mail. A verified answer to Donald's petition was filed by Johnson, through a California attorney on March 29, 1979.

On May 14, 1979 the California attorney mailed an unverified letter to the trial judge requesting the appointment of a local public defender to represent Johnson. Alternatively, he requested that either Donald be directed to pay Johnson's transportation expenses to Indiana or that the matter be submitted on interrogatories and/or deposi-

tions taken in California. These requests were denied on the day of the trial. On May 24, 1979 the trial court heard evidence and entered its findings and conclusions terminating Johnson's parental rights.

■ Johnson initially contends that this case should be determined under the Uniform Child Custody Jurisdiction Act (UCCJA). IC 1971, 31-1-11.6-1 et seq. (1979 Burns Supp.).[1] According to Johnson, if the UCCJA is properly applied, an Indiana court would lack subject-matter jurisdiction.

■ While it is true, as Johnson asserts, that a termination of parental rights is the ultimate determination of child custody as to that parent, it does not follow that such a case necessarily falls under the UCCJA. The purpose of the UCCJA is to provide guidelines in determining a court's jurisdiction to make a custody determination. According to IC 1971, 31-1-11.6-2(2) " '[c]ustody determination' means a court decision and court orders and instructions providing for the custody of a child, including visitation rights . . . ." The instant action however was not brought for the purpose of establishing or modifying a custody decree, but rather, to terminate all parental rights of the mother. Termination of parental rights is a statutory mechanism which permits a child to be adopted without the consent of a parent. See, IC 1971, 31-3-1-6(g)(4) and 31-3-1-7 (Burns Code Ed.). As such, jurisdiction for the termination of parental rights is not encompassed by the UCCJA, but instead, is properly determined under the adoption statutes.

■ IC 1971, 31-3-1-1 (Burns Code Ed.) sets out of the jurisdictional requisites for adoption proceedings as follows:

"Any resident of this state desirous of adopting any person under twenty-one [21] years of age, hereinafter referred to as a child, may by attorney of record file

1. Johnson makes a passing reference in her brief regarding the trial court's failure to make a finding pertaining to its jurisdiction as required by IC 1971, 31-3-1-7(f). This challenge was not made in Johnson's motion to correct errors, nor is it supported by cogent argument in her brief. This issue is therefore waived. Ind.Rules of Procedure, Trial Rule 59(G) and Appellate Rule 8.3(A)(7).

a petition with the clerk of the court having jurisdiction in probate matters in the county where such petitioner resides or in which is located any duly licensed child-placing agency or governmental agency having custody of such child, or in the county where such child may be found."

Donald does not literally come under this statute because he is not seeking to adopt his own child. Essentially however, Donald's petition seeks to open the way for a future adoption without the consent of the mother. Since the Legislature has not enacted a separate statute granting courts jurisdiction under these circumstances, a court having jurisdiction over probate matters in the county where the petitioner resides has jurisdiction to terminate parental rights.

■ Johnson asserts that the adoption statutes are not applicable because no adoption was pending at the time of trial. This argument is contrary to IC 1971, 31–3–1–7 which provides in part:

"When the petition is filed the adoption of the minor child need not be immediately contemplated, and the purpose of the petition may be to facilitate adoption when adoptive opportunities arise."

In the present case Donald's attorney stated at the hearing that ultimately Donald would like to be remarried and have his spouse adopt the child. Johnson's argument in this regard must fail.

■ Johnson in her reply brief raises a "minimal contacts" argument in an apparent challenge to the court's jurisdiction over her person. This argument was not raised in the pretrial pleadings nor the motion to correct errors. Jurisdiction over the person, unlike subject-matter jurisdiction, cannot be raised for the first time on appeal. *Allstate Ins. Co. v. Morrisson et al.* (1970), 146 Ind.App. 497, 256 N.E.2d 918; *Becker v. Ind. Nat'l Bank, etc. et al.* (1958), 128 Ind. App. 678, 149 N.E.2d 832. Johnson has therefore waived this issue.

■ Johnson next argues that the trial court erred in failing to appoint local counsel despite notice that she was indigent.

Johnson cites numerous cases for the proposition that due process and equal protection compel the appointment of counsel to an indigent parent whose parental rights may be terminated in a court proceeding. She ignores however the threshold question of whether the court was properly petitioned for appointment of counsel.

IC 1971, 34–1–1–3 (Burns Code Ed.) provides:

"Poor person, attorney for.—Any poor person not having sufficient means to prosecute or defend an action may apply to the court in which the action is intended to be brought, or is pending, for leave to prosecute or defend, as a poor person. The court, if satisfied that such person has not sufficient means to prosecute or defend the action, shall admit the applicant to prosecute or defend as a poor person, and shall assign him an attorney to defend or prosecute the cause, and all other officers requisite for the prosecution or defense, who shall do their duty therein without taking any fee or reward therefor from such poor person."

A trial court in its sound discretion may appoint an attorney under the statute, however, a failure to appoint an attorney will be reviewed only for an abuse of discretion. *State ex rel. Jones v. Smith, State ex rel. Jones v. Hornaday* (1942), 220 Ind. 645, 45 N.E.2d 203, 46 N.E.2d 199; *Hoey v. McCarthy* (1890), 124 Ind. 464, 24 N.E. 1038.

■ A review of the record reveals very little evidence of Johnson's indigency. In her verified answer, prepared by an attorney, Johnson stated that she and her husband were undergoing extreme financial hardships due to an injury which left Johnson's husband unemployed. She also stated however that her husband was undergoing rehabilitation into another job. Nowhere in the answer does Johnson request an appointment of an attorney. In the May 14, 1979 letter, Johnson's California attorney stated that Johnson would not be able to attend the hearing scheduled for May 24, partly because she had no funds and could not finance a trip to Indiana. The letter went on to state:

"In the event that the Respondent will require the guidance of an attorney to protect her parental rights in your courtroom in Indiana, the Respondent respectfully requests that a public defender be appointed to represent her. I would like to continue in my efforts to assist Respondent, and would appreciate the association of local counsel."

It is not clear from this evidence that Johnson could not afford an attorney. In fact, it appears that Johnson had retained a California attorney who was merely seeking the aid of a local counsel to defend the action. Nowhere does there appear to be a request for appointment of counsel due to Johnson's economic status. Absent such a request, and evidence in support thereof, the trial court did not abuse its discretion in denying Johnson's request for appointment of local counsel.

■ Johnson contends further that it was a denial of due process for the trial court to refuse her requests for a continuance or funds to travel to Indiana, and for interrogatories and/or depositions taken in California. A careful examination of the record however fails to indicate that a continuance was ever requested. The May 14 letter merely states that Johnson and/or her California attorney would not be able to attend the May 24 hearing. There is no indication that either Johnson or her attorney would ever make an appearance in Indiana. In fact, the attorney's letter asks for the appointment of local counsel to represent Johnson in court.

Johnson relies on IC 1971, 31–1–11.6–11(c), 31–1–11.6–18 and 31–1–11.6–19 (1979 Burns Supp.) to support her requests for Donald to pay for her travel expenses, and for the taking of her testimony or alternatively conducting a hearing in California. These statutes however are contained in the UCCJA. Inasmuch as the UCCJA is not applicable in the present case the trial court committed no error in refusing these requests.

Johnson next challenges the sufficiency of the evidence in that there is no proof that she was able to communicate with her child. In particular, Johnson alleges that she attempted to telephone and visit the child but that these attempts were thwarted by the custodial grandparents.

It is firmly established that when the sufficiency of the evidence is challenged, this Court will neither weigh the evidence nor judge the credibility of witnesses, but will look only to the evidence most favorable to the judgment and the reasonable inferences to be drawn therefrom. If, from this view, there is evidence of probative value, the judgment will be sustained.

Donald's testimony reveals that to his knowledge Johnson never contacted her daughter in person, or by telephone and never sent her Christmas or birthday gifts. The custodial grandmother testified that Johnson never contacted her by telephone or letter to inquire about the child or to request a visitation. Additionally, the grandmother testified that she had never done anything to frustrate or impede any visitation attempts. She specifically denied the attempts alleged by Johnson in her answer.

Although the trial testimony conflicted with the allegations in Johnson's answer, this conflict was within the province of the trial court to resolve. Apparently the court concluded that the grandparents did not block communication.

■ Johnson's argument also raises the issue of whether she was able to communicate with her child even if the grandparents did not interfere with any attempts. A similar contention was raised in *In re Adoption of Dove* (1977), Ind.App., 368 N.E.2d 6. There the Court held:

"Even though Carol was far removed from Ronnie in distance, nevertheless, she could have maintained regular correspondence through letters and phone calls." *Id.* at 10.

In the present case it appears that Johnson's only contact with her daughter for a period of four years was through birthday cards, Christmas cards and postcards. Many of these cards contained no messages. This is sufficient evidence for the trial court

to determine that Johnson's failure to meaningfully communicate with her daughter was unjustified.

■ Finally Johnson asserts as error the trial court's consideration of the best interests of the child prior to an adjudication of the termination of the mother's rights. IC 1971, 31–3–1–7(c) itself provides:

"When a court terminates parental rights under this chapter [31–3–1–1—31–3–1–12] its paramount concern shall be for the health, welfare and future of the child whose adoption is immediately contemplated or who in the future will hopefully be adopted."

The statute thus directs the court to consider the best interests of the child when it is faced with the issue of termination of parental rights. *In re Adoption of Dove, supra.*

For the above reasons the judgment of the trial court is affirmed.

Affirmed.

STATON, J., concurs.

GARRARD, J., dissents with opinion.

GARRARD, Judge, dissenting.

I respectfully dissent from the majority view that the Superior Court of Porter County had proper jurisdiction to terminate the parental rights of a mother who was a California resident in a child who was an Illinois resident.

I agree that under the UCCJA the court was not empowered to make such a noncustodial determination. I further agree that such a termination is a statutory mechanism, and therefore must fit within the requirements of the statute for jurisdiction to exist.

The father premises that compliance upon his status as father under the statute as it existed prior to October 1, 1979. That statute did authorize the filing of such a petition by the other parent. IC 31–3–1–7(e). However, the preceding subsection (c) specified that jurisdiction to grant such a petition was vested in "the court having jurisdiction over adoption proceedings under this chapter."

IC 31–3–1–1 defines that jurisdiction as existing in the court having jurisdiction in probate matters "where such petitioner resides, or in which is located any duly licensed child-placing agency or governmental agency having custody of such child, or in the county where such child may be found."

It is apparent that jurisdiction can not rest on either the second or third qualification since the child resided in Illinois and was not in the custody of an agency. Was Capps a "petitioner" within the meaning of the statute? Clearly he technically was not since the preceding portion of the sentence quoted from restricts the section to "[a]ny resident of this state desirous of adopting any person under eighteen years of age . . . may . . . file a petition." "Petition" refers to a petition for adoption, and none was filed in this case. Petitioner equally clearly refers to a petitioner for adoption and Capps did not qualify as such. The majority recognizes as much in conceding that Capps does not *literally* come under the statute.

Traditionally, we have held that one desiring the benefit of a special statutory action must bring himself squarely within all the requirements of the statute or he may not succeed. *See, e. g., Watson v. Strohl* (1943), 220 Ind. 672, 46 N.E.2d 204; *Blade Corp. v. American Drywall, Inc.* (1980), Ind.App., 400 N.E.2d 1183; *DeMayo v. State ex rel. Dept. of Natural Resources* (1979), Ind.App., 394 N.E.2d 258. I feel that rule of law is especially appropriate where we are attempting to litigate the existence of the parent-child relationship between two non-residents of the State of Indiana.

Therefore, I dissent.