In the Matter of E.P. and J.P., Tonya Dunn, Appellant–Respondent,

v.

**MARION COUNTY OFFICE OF FAMILY AND CHILDREN,** Appellee–Petitioner.

No. 49A05–9306–JV–235.

Court of Appeals of Indiana.

July 20, 1995.

Jane Ruemmele, Indianapolis, for appellant.

Peter M. Racher, Plews & Shadley, Indianapolis, Richard A. Waples, Legal Director, Indiana Civil Liberties Union, Indianapolis, for amicus curiae Indiana Civil Liberties Union.

Andrew P. Wirick, Chief Counsel, Litigation, Office of Corp. Counsel, Indianapolis, for amicus curiae Marion County, Indiana.

Kenneth J. Falk, Jacquelyn E. Bowie, Legal Services Organization of Indiana, Inc., Indianapolis, for amicus curiae Legal Services Organization of Indiana, Inc.

Elizabeth G. Filipow, Marion County Office of Family and Children, Indianapolis, for appellee.

## OPINION

RUCKER, Judge.

In this interlocutory appeal we address two issues: 1) whether a parent in a Child in Need of Services (CHINS)[1] proceeding is entitled to a jury trial; and 2) whether a parent in a Child In Need of Services (CHINS) proceeding is entitled to court-appointed counsel.

On August 10, 1992, the Marion County Office of Family and Children (Welfare Department) filed a petition in the Marion Superior Court, Juvenile Division, alleging that the children of Tonya Dunn, J.P., and E.P.,

---

1. Ind.Code § 31–6–4–3.

were in need of services. The petition followed allegations that J.P. had been sexually molested by Dunn's boyfriend. Dunn appeared for an initial hearing on August 19, 1992, at which time the court advised her that she had a right to an attorney and also the right to a continuance in order to obtain an attorney. After explaining that the CHINS proceeding was not a criminal matter the trial court continued, "[t]hat also means though, the Court is not responsible to appoint an attorney for you. If you want a lawyer and can't afford one, there are several organizations available in Marion County to represent you. They include Legal Aid Society, Legal Services Organization and a program through the Indianapolis Bar Association called the Pro Bono Panel." *Record* at 134–135. Dunn then requested a continuance for the purpose of obtaining counsel.

At the continued hearing on September 2, 1992, Dunn again advised the court that she had been unable to obtain counsel. Dunn also denied the allegations in the CHINS petition. After the Welfare Department indicated that it would need to conduct discovery, the trial court set the matter for pretrial conference. At the pre-trial conference conducted October 14, 1992, the subject of Dunn obtaining counsel was not raised. The trial court ordered that the children were to remain under the supervision of the Welfare Department while placed with the children's father. The case was set for a factfinding hearing on January 6, 1993. In the interim between the pre-trial conference and the factfinding hearing the Welfare Department filed a motion to compel Dunn to answer interrogatories which the trial court granted. When Dunn failed to comply with the trial court's order the Welfare Department filed a motion for sanctions. The trial court granted the motion by prohibiting Dunn from calling witnesses at the factfinding hearing or from introducing evidence to controvert certain allegations, namely (1) that Dunn's boyfriend digitally penetrated J.P., (2) that the boyfriend told J.P. not to tell anyone what had happened, and (3) that J.P. nonetheless told Dunn who advised her boyfriend not to do it anymore.

The factfinding hearing ultimately began March 3, 1993, and again Dunn appeared without counsel. The Welfare Department called as a witness Kelly Verbeck, a social worker with Child Protective Services. Ms. Verbeck recounted the contents of a medical report concerning J.P., her conversations with the physician who treated J.P., and testified as to what the physician told her that J.P. said to him. Ms. Verbeck also testified concerning what she had been told by a police detective investigating the child molesting allegations. The Welfare Department then rested. Dunn took the stand in her own defense. However, because related criminal charges were pending against her, the trial court first admonished Dunn concerning the possibilities of self incrimination, and then decided to continue the hearing so that Dunn could consult with an attorney. The continued hearing began June 23, 1993, at which time counsel appeared for Dunn for the limited purpose of requesting court-appointed counsel on Dunn's behalf and demanding a jury trial. The court denied both motions and this interlocutory appeal ensued in due course.

## I.

Dunn contends the trial court erroneously refused her demand for a jury trial. According to Dunn her entitlement to a jury arises from three sources: Article I § 20 of the Indiana Constitution, the Seventh Amendment to the United States Constitution, and Ind.Trial Rule 38.

We first observe that Ind.Code § 31–6–7–10(c) specifically provides "*[a]ll matters in juvenile court shall be tried to the court,* except that a trial of an adult charged with a crime, unless he requests a bench trial, shall be tried to a jury." (Emphasis added.) Dunn does not challenge the foregoing statute as unconstitutional. Rather, she asserts it is not sufficiently specific to deny parents in CHINS proceedings the right to trial by jury. We disagree. The statute makes clear that except in those instances where an adult is charged with a crime "all matters" within the jurisdiction of the juvenile court shall be tried by the court rather than a jury. There is no question that with exceptions not rele-

vant here, a juvenile court has exclusive original jurisdiction in proceedings in which a child is alleged to be in need of services. Ind.Code § 31–6–2–1.1. Contrary to Dunn's assertion, the statute here is specific and precludes any entitlement to trial by jury.

■ As for the Indiana Constitutional right [2] to a jury trial the law is settled. The right has been construed to apply only to actions triable by jury at common law. *Gray v. Monroe County DPW* (1988), Ind.App., 529 N.E.2d 860 citing *State ex rel. Gannon v. Lake Circuit Court* (1945), 223 Ind. 375, 61 N.E.2d 168. Because no special judicial system for juveniles existed at common law, *Bible v. State* (1970), 253 Ind. 373, 254 N.E.2d 319, 320, juvenile matters obviously were not triable by jury. Thus, we have consistently held that Art. I § 20 does not give a party a right to a jury in juvenile court proceedings. *Gray*, 529 N.E.2d at 861; *see also, Shupe v. Bell* (1957), 127 Ind.App. 292, 141 N.E.2d 351.

Dunn acknowledges the foregoing cases but challenges their continued validity by arguing the cases do not distinguish between proceedings which focus primarily on the acts of the juvenile and the juvenile's right to a trial by jury versus the legal interest of parents where it is alleged that the parents neglected their children. We find this argument unpersuasive. In both *Shupe* and *Gray* we specifically considered a parent's right to a jury trial in the CHINS context. In *Gray* we held that the father of a child adjudged a CHINS was not entitled to a trial by jury because such a right would not have been afforded him at common law. *Gray*, 529 N.E.2d at 861. In *Shupe* we determined that a neglect proceeding was "in the nature of a civil proceeding and [ ] not triable by jury." *Shupe*, 141 N.E.2d at 352. The law in this area is settled and we decline the implied invitation to change it.

■ Dunn's argument that the Seventh Amendment to the United States Constitu-

tion [3] guarantees her a right to trial by jury is contrary to existing case authority. The Amendment's guarantee of a jury trial is a limitation on the federal government and does not prohibit states from restricting the right in state courts. *State Line Elevator, Inc. v. Board of Tax Comm'rs* (1988), Ind. Tax, 526 N.E.2d 753, *reconsideration granted* 528 N.E.2d 501; *Hiatt v. Yergin* (1972), 152 Ind.App. 497, 284 N.E.2d 834, *trans. denied; Iacaponi v. New Amsterdam Casualty Co.*, 258 F.Supp. 880 (W.D.Pa.1966), *aff'd*, 379 F.2d 311 (3d Cir.1967), *cert. denied*, 389 U.S. 1054, 88 S.Ct. 802, 19 L.Ed.2d 849, (1968); *Voigt v. Webb*, 47 F.Supp. 743 (E.D.Wash.1942). Indeed individual states may even abolish the right to jury trials. *New Jersey Chiropractic Ass'n v. State Bd. of Medical Examiners*, 79 F.Supp. 327 (D.N.J.1948). Although Indiana has not abolished the right to trial by jury, our courts have long held that the Seventh Amendment to the United States Constitution is not applicable to trials in this state's courts. *Hiatt*, 284 N.E.2d 834; *Hayworth v. Bromwell* (1959), 239 Ind. 430, 158 N.E.2d 285. Accordingly, Dunn's reliance on the Seventh Amendment is misplaced.

■ Without elaboration or citation to authority Dunn asserts "Trial Rule 38 provides for the right to trial by jury." *Brief of Appellant* at 16. Dunn is mistaken. Section (B) of the rule provides in pertinent part:

> *Any party may demand a trial by jury of any issue triable by right of a jury* by filing with the court and serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than ten [10] days after the first responsive pleading to the complaint, or to a counterclaim, cross-claim or other claim if one properly is pleaded; and if no responsive pleading is filed or required, within ten [10] days after the time such pleading otherwise would have been required.

---

**2.** Article I § 20 of the Indiana Constitution provides: "In all civil cases, the right of trial by jury shall remain inviolate."

**3.** The Seventh Amendment provides: "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any court of the United States, than according to the rules of the common law."

(Emphasis added.) Setting aside the fact that Dunn did not satisfy the ten-day requirement for requesting a jury trial, her argument nonetheless fails. Trial Rule 38(B) does not provide a right to a jury trial; rather, it merely sets forth the procedure for exercising the right where the right already exists. As previously discussed, CHINS proceedings are not triable to a jury as a matter of right. *See Gray v. Monroe County DPW* (1988), Ind.App., 529 N.E.2d 860; *Shupe v. Bell* (1957), 127 Ind.App. 292, 141 N.E.2d 351. The trial court properly denied Dunn's request for a jury trial. We find no error here.

## II.

Dunn next contends the trial court erred in denying her request for court-appointed counsel. According to Dunn, she is entitled to counsel by reason of the Due Process Clause of the Fourteenth Amendment, Ind. Code § 31-6-7-2(b) which concerns the appointment of counsel in CHINS cases, and Ind.Code § 34-1-1-3 which entitles a "poor person" to appointment of counsel where the person does not have sufficient means to prosecute or defend an action.

### Due Process Clause

The Fourteenth Amendment to the United States Constitution requires that no person shall be deprived of life, liberty, or property without due process of law. Although due process has never been precisely defined, the phrase expresses the requirement of "fundamental fairness." *Lassiter v. Department of Social Servs.,* 452 U.S. 18, 26, 101 S.Ct. 2153, 2159, 68 L.Ed.2d 640 (1981), *reh'g denied.* In the context of representation of counsel, the fundamental fairness requirement does not mandate that counsel shall be appointed in all cases. To the contrary there is a presumption against appointment of counsel where the litigant's physical liberty is not at stake. "[A]n indigent litigant has a [Fourteenth Amendment due process] right to appointed counsel *only when,* if he loses, he may be deprived of his physical liberty." *Lassiter,* 452 U.S. at 26–27, 101 S.Ct. at 2159 (emphasis added). This presumption may be overcome, however, where other elements of due process so require.

*Id.; see also Kennedy v. Wood* (1982), Ind. App., 439 N.E.2d 1367, *reh'g denied.* In determining whether an indigent litigant may be entitled to court appointed counsel we must first evaluate (1) the private interests at stake, (2) the government's interest, and (3) the risk that the procedures used will lead to an erroneous decision. *Lassiter,* 452 U.S. at 25–27, 101 S.Ct. at 2159. Next, we balance these elements against each other and weigh them against the presumption that there is a right to appointed counsel only where the indigent, if unsuccessful, may lose his or her personal freedom. *Lassiter,* 452 U.S. at 25–27, 101 S.Ct. at 2159.

There is no question that the private interests implicated here are substantial. The United States Supreme Court has recognized that the relationship between parent and child is constitutionally protected. *Quilloin v. Walcott,* 434 U.S. 246, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978), *reh'g denied.* Specifically, the Court has ruled that the Due Process Clause of the Fourteenth Amendment protects freedom of personal choice in family life matters. *Cleveland Bd. of Educ. v. LaFleur,* 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974). This court has interpreted this protected freedom of choice to include the parent's "fundamental right to raise [his or] her child without undue interference by the state." *Wardship of Nahrwold v. Department of Pub. Welfare* (1981), Ind.App. 427 N.E.2d 474, 477. Indeed, the courts of this state have long and consistently held that the right to raise one's children is essential, basic, more precious than property rights, and within the protection of the Fourteenth Amendment to the United States Constitution. *See e.g., Duckworth v. Duckworth* (1932), 203 Ind. 276, 179 N.E. 773; *Matter of Adoption of Hewitt* (1979), Ind.App., 396 N.E.2d 938; *Matter of Tucker* (1991), Ind. App., 578 N.E.2d 774, *trans. denied* (citing *Pierce v. Society of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); *Meyer v. Nebraska,* 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923)).

On the other hand, the state's interest in what may be characterized as the private ordering of interpersonal relation-

ships, although not of constitutional dimension, is nonetheless significant. The state has a compelling interest in protecting the welfare of the child by intervening in the parent-child relationship when parental neglect, abuse, or abandonment are at issue. *See Matter of Joseph* (1981), Ind.App., 416 N.E.2d 857; *Matter of Perkins* (1976), 170 Ind.App. 171, 352 N.E.2d 502. Also, "[i]t is the policy of this state ... [t]o strengthen family life by assisting parents to fulfill their parental obligations; and [t]o remove children from their families only when it is in the child's best interest or in the best interest of public safety." I.C. § 31–6–1–1. Thus, it is clear that a parent's constitutionally protected right to raise his or her child is not without limitation. The right must at all times yield to the child's best interest as determined by the courts of this state. *In re Adoption of D.V.H.* (1992), Ind.App., 604 N.E.2d 634, *trans. denied*. Although we do not contend the state's interests in a CHINS proceeding outweigh those of the parent, the state's interests still represent a significant counter balance.

Finally, we must consider the risk that the procedure used will lead to an erroneous result. There is no question that CHINS proceedings are a complex legal matter potentially involving several court hearings. We also acknowledge that litigating any case, including a CHINS matter, without the benefit of counsel may increase the risk of an erroneous decision. Here, for example, unchallenged hearsay testimony provided the basis for the court to determine that Dunn's children were in need of services. Also the trial court's order imposing sanctions against Dunn for failing to respond to a discovery request, was likewise unchallenged. However, unlike a termination proceeding, *see Lassiter*, 452 U.S. at 18, 101 S.Ct. 2153, or a paternity proceeding, *see Kennedy*, 439 N.E.2d 1367, where an erroneous result obviously would be disastrous, an erroneous CHINS adjudication has a far less disastrous impact on the parent-child relationship. Explicit in the statutory framework of the CHINS proceeding is a legislative policy and purpose "[t]o insure that children within the juvenile justice system are treated as persons in need of care, treatment, rehabilita-

tion, or protection" and, as previously indicated, "[t]o strengthen family life by assisting parents to fulfill their parental obligations." I.C. § 31–6–1–1(3) and (5). Even where the juvenile court adjudges a child as a CHINS, the court's ultimate disposition, consistent with the child's welfare and the safety of the community, must be one that: (1) is in the best interest of the child; (2) least interferes with family autonomy; (3) is least disruptive of family life; (4) imposes the least restraint on the freedom of the child and his parent, guardian, or custodian; and (5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian. I.C. § 31–6–4–15.3(e). Thus even assuming without deciding that the risk of an erroneous CHINS adjudication is great when an indigent parent has no counsel to assist her through the various stages of the proceedings or to conduct vigorous cross-examination of the petitioner's key witness, we do not view the risk as outweighing the presumption against court-appointed counsel.

■ Balancing the private interests at stake, the government's interest, and the risk that the procedure used will lead to an erroneous decision, and weighing them against the presumption that there is no right to appointed counsel unless the litigant's physical liberty is at stake, we conclude that the due process guarantee of the Fourteenth Amendment does not require court-appointed counsel in this case.

*Ind.Code § 31–6–7–2(b)*

■ Dunn next contends she is entitled to court-appointed counsel under the provisions of I.C. § 31–6–7–2(b) which provides in relevant part:

> If a parent in proceedings to terminate the parent-child relationship does not have an attorney who may represent him without a conflict of interest, and if he has not lawfully waived his right to counsel ... the juvenile court shall appoint counsel for him.... The court *may* appoint counsel to represent any parent in any other proceeding.

(Emphasis added.) According to Dunn, we should construe the word "may" to mean

"shall" in order to effect the legislative intent to provide counsel for indigent parents in CHINS proceedings. First, we discern no such legislative intent. Second, in *Smith v. Marion County DPW* (1994), Ind.App., 635 N.E.2d 1144, *trans. denied*, we held that under the foregoing statute appointment of counsel in a CHINS proceeding is a matter left to the discretion of the trial court. We reach the same conclusion here. The question therefore is whether the trial court abused its discretion in not appointing counsel for Dunn.

■ A CHINS proceeding is highly fact sensitive and whether the trial court abuses its discretion in declining to appoint counsel depends on the unique facts and circumstances of each case. In that regard we agree with the observations made by Judge Sullivan in his concurring opinion in *Smith:*

> If lack of counsel is likely to lead to particularly damaging uncontested allegations and if such allegations be deemed established and not subject to subsequent challenge, those allegations might virtually assure a subsequent termination decision. In such situations the trial court might well abuse its discretion by failing to appoint counsel for an indigent parent.

*Smith*, 635 N.E.2d at 1151.

■ In its petition seeking adjudication that E.P. and J.P. were in need of services, the Welfare Department alleged in essence and in part (1) that Dunn's boyfriend had digitally penetrated four-year-old J.P., (2) that the boyfriend told J.P. not to tell anyone what had happened, and (3) that J.P. nonetheless told Dunn who advised her boyfriend not to do it anymore. The sanctions imposed on Dunn for her failure to respond to discovery resulted in Dunn not being allowed to call witnesses at the factfinding hearing, nor to introduce evidence contradicting the Welfare Department's allegations. Consequently, although Dunn denied the general allegation that her children were in need of services, the foregoing specific and particularly damaging allegations were essentially uncontested. Thus, even though the allegations were not technically "deemed established," *Smith* at 1151, the result is the same because Dunn was not permitted to contest them.[4] Nonetheless we cannot say that the uncontested allegations "virtually assure a subsequent termination decision." *Id.* Before parental rights may be involuntarily terminated, the Welfare Department must prove by clear and convincing evidence:

(1) The child has been removed from the parent for at least six (6) months under a dispositional decree;

(2) There is a reasonable probability that:

(A) The conditions that resulted in the child's removal or the reasons for placement outside the parent's home will not be remedied; or

(B) The continuation of the parent-child relationship poses a threat to the wellbeing of the child;

(3) Termination is in the best interests of the child; and

(4) there is a satisfactory plan for the care and treatment of the child.

I.C. § 31–6–5–4(c); *Matter of C.D.* (1993), Ind.App., 614 N.E.2d 591, *trans. denied.* While the damaging allegations here are relevant to sections (2) and (3) of the foregoing statute, the allegations, standing alone, are not sufficient to prove those sections. Rather, at this stage of the proceedings, the Welfare Department must overcome a considerable burden of proof before Dunn's parental rights can be involuntarily terminated.

In sum the allegation of sexual abuse by Dunn's boyfriend does not assure that Dunn's parental rights will be ultimately terminated. Dunn was not entitled to appointment of counsel as a matter of right under the provisions of I.C. § 31–6–7–2(b), and the trial court did not abuse its discretion in refusing to appoint counsel to represent Dunn.

### *Ind. Code § 34–1–1–3*

■ Dunn also contends that she is entitled to counsel under the provisions of

---

4. In her *Brief of Appellant* Dunn requests that we relieve her from the sanctions imposed by the trial court. Dunn's request is misdirected and should be presented to the trial court by way of an Ind.Trial Rule 60(B) Motion For Relief From Judgment. The trial court's ruling on the motion may then be reviewed by this court for an abuse of discretion. *Hendrix v. Page* (1993), Ind.App., 622 N.E.2d 564, 566, *reh'g denied*, 640 N.E.2d 1081.

I.C. § 34-1-1-3 which provides in relevant part:

> *Attorney for poor person.*—Any poor person not having sufficient means to prosecute or defend an action may apply to the court in which the action is intended to be brought, or is pending, for leave to prosecute or defend as a poor person. The court, if satisfied that such person has not sufficient means to prosecute or defend the action, shall admit the applicant to prosecute or defend as a poor person, and shall assign him an attorney. . . .

In order to invoke this statute, the litigant must request appointment of counsel based on his or her economic status. *In re Johnson* (1981), Ind.App., 415 N.E.2d 108, 112, *reh'g denied; Gee v. State* (1987), Ind., 508 N.E.2d 787, *reh'g denied.* The trial court must then satisfy itself that the litigant does not have "sufficient means to prosecute or defend the action." I.C. § 34-1-1-3; *see also, Offutt v. Sheehan* (1976), 168 Ind.App. 491, 344 N.E.2d 92, 101. Although our research reveals no case authority so declaring, the statute makes clear that once the trial court is satisfied that the applicant has insufficient financial resources to proceed in an action the court "shall assign him an attorney." The trial court's determination of whether a litigant has sufficient means to prosecute or defend an action is reviewed for an abuse of discretion. *Johnson,* 415 N.E.2d at 111.

■ The Welfare Department counters that appointment of counsel in a CHINS proceeding is specifically governed by I.C. § 31-6-7-2(b) and therefore I.C. § 34-1-1-3 is not applicable. We disagree. Where two statutes address the same subject matter, we construe them consistently and harmoniously if possible. *Decatur Township of Marion County v. Marion County Home Bd.* (1991), Ind.App., 578 N.E.2d 390, 393, *trans. denied.* If the statutes cannot be harmonized or reconciled, then the more specific or detailed statute will prevail over the more general statute as to the subject it covers. *Id.* The statutes here address the same subject matter, namely, appointment of counsel. However we need not debate whether one is specific and the other more detailed because the statutes can be harmonized. Under the provisions of I.C. § 34-1-1-3 all persons in any civil action are entitled to court-appointed counsel, provided counsel is requested and the evidence reveals the person does not have sufficient means to prosecute or defend the action. On the other hand I.C. § 31-6-7-2(b) affords the court discretion to appoint counsel for parents in a juvenile court proceeding regardless of financial status. Thus an indigent parent may qualify for court-appointed counsel under one statute but not the other. In essence we see no irreconcilable conflict between the two statutes.

■ The record shows that at the continued hearing on June 23, 1993, counsel appeared on Dunn's behalf for the limited purpose of requesting court-appointed counsel and demanding a trial by jury. As to the request for court-appointed counsel, a written motion was filed on Dunn's behalf and attached thereto was Dunn's affidavit asserting in part "I do not have the funds with which to hire counsel. . . ." *Record* at 86. The trial court entertained argument on the motion. However the record is absent any indication that an inquiry was made or a hearing conducted to determine whether Dunn in fact had "sufficient means to prosecute or defend the action." I.C. § 34-1-1-3. Therefore we must remand this case to the trial court for an appropriate proceeding concerning Dunn's financial and economic resources. If the trial court determines that Dunn does not have the resources to hire private counsel, then counsel must be appointed for her and paid at public expense. On the other hand should the trial court determine that Dunn has sufficient means to hire her own attorney, then the court's decision may be reviewed for abuse of discretion. This case is remanded for proceedings consistent with this opinion. In all other respects the judgment of the trial court is affirmed.

Judgment affirmed and cause remanded.

SHARPNACK, C.J., and RILEY, J., concur.