**Ronnell SMITH, Appellant–Respondent,**

v.

**MARION COUNTY DEPARTMENT OF PUBLIC WELFARE, Appellee–Petitioner.**

No. 49A02–9305–JV–222.

Court of Appeals of Indiana, Second District.

June 23, 1994.

Transfer Denied Nov. 3, 1994.

Mark E. Bell, Bell & Bell, Indianapolis, for appellant.

Mary Jane Norman, Atty. for Marion County, Office of Family and Children, Indianapolis, appellee.

FRIEDLANDER, Judge.

Appellant-respondent Ronnell Smith (Smith) appeals the trial court's termination of her parental rights as to her minor son, Joseph, claiming that the trial court erred in denying Smith a right to court-appointed counsel during a Child In Need Of Services (CHINS) proceeding.[1]

We affirm.

The facts most favorable to the judgment are that on February 22, 1991, The Department of Public Welfare (DPW) filed a CHINS petition alleging that Smith was homeless and attempting to sell Joseph (born on August 28, 1989), that Smith was never available to care for Joseph, was an alcoholic, a "heavy" drug user, and that she served as a "lookout" in nearly fifty robberies.

At the initial hearing, the trial court advised Smith of her rights, and she requested and received a continuance for the purpose of obtaining counsel. The continued initial hearing was held on March 5, and Smith advised the court that she was not able to

1. Oral argument was held in Indianapolis on May 17, 1994.

retain counsel until March 8. Another continuance was requested and granted. On June 4, 1991, Smith admitted, without representation of counsel, that Joseph was a CHINS.

Smith signed an agreed entry in lieu of a fact-finding hearing. While admitting that Joseph was a CHINS, Smith did not admit or deny the *specific* allegations contained in the petition. The agreed entry provided that Joseph would remain in his aunt's home while Smith would submit to an assessment at Midtown Mental Health Facility. Smith also agreed to participate in parenting classes, maintain a proper home, visit Joseph regularly, and keep the DPW apprised of any changes concerning her employment and residence.

At a hearing conducted on December 3, 1991, the DPW reported that Smith was not making progress. Smith failed to appear at a subsequent hearing, and the trial court was advised that Smith was not attending parenting classes. On May 12, 1992, the DPW filed a petition to terminate Smith's parental rights as to Joseph. Counsel was appointed for Smith, and a final hearing on the petition was concluded on December 29, 1992.

The trial court entered the following findings of fact and conclusions of law:

### "FINDINGS OF FACT

1. Joseph Smith, date of birth August 28, 1989, is the child of Ronnel [sic] Smith and his alleged father is Joe Blaylock.

2. Joseph Smith was found to be a Child in Need of Services by this Court's order of April 30, 1991.

3. Joseph Smith was removed from the care and custody of his parents in February, 1991 due to their inability, refusal or neglect to supply him with necessary food, clothing, shelter, medical care or supervision. (Stipulation of the parties [sic] filed October 23, 1992). He was then placed in relative care with his maternal aunt, Michelle Smith.

4. Joseph Smith was placed into foster care with the current foster parents on November 19, 1991 because Michelle Smith had asked to have him removed from her

care and he has resided continuously with the current foster parents since November 19, 1991.

5. The following services have been offered and available to Ronnell Smith: parenting assessment, parenting classes through the Marion County Department of Public Welfare ("Department"), Family Service Association, and the Family Support Center, bus tickets, drug and alcohol assessment, individual low or no-cost counseling through the community mental health center, foster and relative care for Joseph, visitation with Joseph, and caseworker services.

6. The Department has offered the parents reasonable services in light of all the circumstances, including the parents' failure to follow through with necessary services, and Joseph's needs for permanency.

7. Ronnell Smith was aware of the services available to her and necessary to alleviate the reasons for the removal of Joseph from her care and custody, through caseworker communications, both written and oral, and through Court hearings and orders.

8. Despite opportunity to do so, Ronnell Smith failed to visit Joseph on a regular basis throughout the entire time he was a Child in Need of Services.

9. Toni Mattioda, a counselor for children and families, and an expert in the field of parenting assessments, performed a parenting assessment on Ronnell Smith on January 14, 1992.

10. Toni Mattioda testified that Ronnell did not demonstrate any serious psychopathy or thought disorder and was not in need of psychiatric treatment.

11. As a result of the parenting assessment, Mattioda recommended that in order to ensure the emotional health and safety of Joseph, that Ronnell Smith 1) become involved in counseling to resolve personal issues prior to addressing parenting issues; 2) participate in a drug and alcohol assessment; 3) demonstrate a period of stability in relationships, employment, and residence; 4) complete parenting classes; and 5) participate in supervised visitation with

Joseph pending cooperation with the other four recommendations.

12. Mattioda referred Ronnell Smith to Midtown Community Mental Health Center, Fountain Square Clinic, for individual counseling.

13. Ronnell Smith has not participated consistently in individual counseling since the date of the parenting assessment and has not received a positive recommendation from a therapist stating that she has adequately addressed the personal issues identified in the parenting assessment.

14. Ronnell Smith has not demonstrated adequate stability in employment, relationships, or residence while Joseph has been a Child in Need of Services. Since February 7, 1991 Ronnell Smith has had nine different addresses and ten different places of employment.

15. Despite numerous opportunities to do so, Ronnell Smith did not complete a drug and alcohol assessment until October 23, 1992, during the pendency of the termination of parental rights proceedings.

16. Despite numerous opportunities to do so, Ronnell Smith has never completed parenting classes.

17. Ronnell Smith has not completed any educational or vocational classes or training since February 7, 1991.

18. Randall Krupsaw, a clinical psychologist, and expert in the field of assessment of child-caregiver relationships, performed an assessment of the relationship and emotional bonding between Joseph and his current foster parents. The assessment took place on October 6, 1992.

19. Based upon his assessment of Joseph and his current foster parents, it was Dr. Krupsaw's opinion that Joseph had a strong emotional bond to his current foster parents.

20. It was Dr. Krupsaw's opinion, that if the parents' rights were terminated, it was in Joseph's best interest to be adopted by the current foster parents and the current foster parents desire and intend to adopt Joseph if parental rights are terminated.

21. The current whereabouts of Joe Blaylock, the alleged father, are unknown. Joe Blaylock was served with notice of this termination of parental rights proceeding by publication notice, which expired on October 23, 1992. Joe Blaylock has not appeared in this proceeding.

22. Joe Blaylock has not demonstrated any ability to adequately care for Joseph or to alleviate the reasons for the removal of Joseph.

23. There is a reasonable probability that the reasons for the removal of Joseph from the care and custody of his mother, Ronnell Smith, and his alleged father, Joe Blaylock, will not be remedied.

24. There is a reasonable probability that continuation of the parent-child relationship between Joseph and his mother, Ronnell Smith, and his alleged father, Joe Blaylock, poses a threat to the well-being of the child.

25. It is in Joseph's best interest to be adopted by the current foster parents.

26. The plan of the Department for Joseph if parental rights are terminated, adoption by the current foster parents, is satisfactory.

27. Termination of the parental rights of Ronnell Smith and Joe Blaylock is in the best interest of Joseph Smith.

## CONCLUSIONS OF LAW

1. Joseph Smith was found to be a Child in Need of Services by this Court's order of April 30, 1991.

2. Joseph Smith has been removed from his parents under the terms of a dispositional decree for more than six months.

3. There is a reasonable probability that the reasons for the removal of Joseph from the care and custody of his mother, Ronnell Smith, and his alleged father, Joe Blaylock, will not be remedied.

4. There is a reasonable probability that continuation of the parent-child relationship between Joseph and his mother, Ronnell Smith, and his alleged father, Joe Blaylock, poses a threat to the well-being of the child.

5. Termination of the parental rights of Ronnell Smith and Joe Blaylock is in the best interest of Joseph Smith.

6. The plan of the Department for Joseph Smith if parental rights are terminated, adoption by the current foster parents, is satisfactory."

*Record* at 32–36.

Smith appeals, and we restate the issues she presents for review as follows:

I. Was Smith denied a *right* to court-appointed counsel during the CHINS proceeding?

II. Did the trial court abuse its discretion in not appointing counsel for Smith during the CHINS proceeding?

III. Were Smith's due process rights violated when she signed the agreed entry in the CHINS proceeding without the benefit of counsel?

■ Smith was not entitled to court-appointed counsel *as a matter of right* during the CHINS proceeding.

■ While there are no relevant Indiana cases directly on point deciding whether an indigent parent has a right to be represented by court-appointed counsel in a CHINS proceeding, we initially observe that Smith has waived the issue. Smith is presenting this issue for the first time on appeal following the *termination* proceedings, and this court has determined that the time for appealing an issue in a CHINS proceeding commences when the dispositional decree is entered. *See Matter of M.R.* (1983), Ind.App., 452 N.E.2d 1085. Even after the time had expired permitting Smith to appeal, she did not move to set aside the judgment; nor did she raise the issue at the trial stage of the termination proceedings. This court has determined that a party may not raise an issue for the first time on appeal. *Rodgers v. Rodgers* (1987), Ind.App., 503 N.E.2d 1255, *trans. denied.*

The record before us demonstrates that Smith knew she had the right to obtain an attorney of her own choosing, and the trial court granted her the opportunity to do so. *See* appellees' appendix at 7–10. Smith nev-

er requested that an attorney be appointed, and there is no evidence suggesting that Smith was coerced, induced, or defrauded when she signed the agreed entry. Because Smith failed to raise the issue in a timely fashion, she has waived the issue.

Even if the issue had not been waived, Ind.Code 31–6–7–2(b) [hereinafter referred to as the right to counsel statute] provides in relevant part that:

"If a parent in proceedings to terminate the parent-child relationship does not have an attorney who may represent him without a conflict of interest, and if he has not lawfully waived his right to counsel ... the juvenile court shall appoint counsel for him.... The court *may* appoint counsel to represent any parent in any other proceeding."

(Emphasis supplied).

This court had the opportunity to construe the termination statute as it applied to adoption proceedings in *Petition of McClure* (1990), Ind.App., 549 N.E.2d 392. In *McClure*, we determined that because adoption results in the termination of a parent's rights, an indigent non-consenting parent to an adoption proceeding is entitled to court-appointed counsel. A parent's interest in the liberty of his child is a fundamental one, and permanently removing a child from an indigent parent without affording the parent the right to assistance of court-appointed counsel may be a denial of due process. *McClure, supra.*

Unlike adoption proceedings, the entry of a CHINS decree does not necessarily pave the path to a termination of the parent-child relationship. *See* IC 31–6–4–3 *et seq.* Before the parent-child relationship will terminate, the child *must* have been removed from the parent under a dispositional decree for at least six months, *and* the DPW must prove the allegations that are required to be presented in the petition pursuant to IC 31–6–5–4.[2] As provided by the right to counsel

---

**2.** The petition for the termination of parental rights must allege that there is a reasonable probability that "the conditions that resulted in the child's removal or the reasons for placement outside the parent's home will not be remedied;

or the continuation of the parent-child relationship poses a threat to the well-being of the child; termination is in the best interests of the child; *and* there is a satisfactory plan for the care and

statute, an indigent parent acquires the unfettered right to court-appointed counsel at that time. *See* IC 31–6–7–2(b). A CHINS decree simply does not *automatically* contemplate a termination of parental rights, and we cannot say that the legislature impliedly intended that the right of court-appointed counsel attaches during that proceeding. Smith's argument that court-appointed counsel is a fundamental right during proceedings which do not necessarily result in the termination of a parent's right should be addressed to the legislature.

## II.

■ The trial court properly exercised its discretion when it did not appoint counsel for Smith during the CHINS proceeding. As discussed in issue I, *supra,* Smith has not preserved this issue, inasmuch as she failed to raise it in a timely fashion.

Even if the issue had not been waived, the right to counsel statute provides that the court *may* appoint counsel to an indigent parent in proceedings other than termination cases. *See* IC 31–6–7–2(c). The record before us shows that Smith never requested appointed counsel during the CHINS proceeding, and there is no implication that she ever desired one. Smith did not present any evidence demonstrating that she was indigent, which may have entitled her to court-appointed counsel.[3] Failure to develop and provide cogent argument as to this issue preserves nothing for review. *Keller v. State* (1990), Ind., 549 N.E.2d 372.

■ Smith has also failed to show how she was prejudiced by the failure to have counsel present at the CHINS proceeding, inasmuch as she has not demonstrated that the termination hearing would have produced a different result, had she been represented by counsel at the CHINS hearing. One who seeks to disturb a trial court's judgment must affirmatively show an erroneous ruling and prejudice resulting therefrom. *See Northern Indiana Pub. Serv. Co. v. East Chicago Sanitary Dist.* (1992), Ind.App., 590

N.E.2d 1067; *Atwood v. Prairie Village, Inc.* (1980), Ind.App., 401 N.E.2d 97. This court does not presume prejudice, and absent such a showing, we will not disturb the trial court's ruling. *Homehealth, Inc. v. Northern Indiana Pub. Serv. Co.* (1992), Ind.App., 600 N.E.2d 970; *Beta Alpha Shelter of Delta Tau Delta v. Strain* (1983), Ind.App., 446 N.E.2d 626.

The DPW was required to prove each and every element contained in the termination statute by clear and convincing evidence. *Shaw v. Shelby County Dep't of Pub. Welfare* (1992), Ind.App., 584 N.E.2d 595; IC 31–6–5–4. The absence of counsel at the CHINS proceeding had no bearing on the evidence that was presented at the termination hearing. The DPW established that Smith did not visit Joseph on a regular basis. She also failed to participate in required individual counseling. Smith did not demonstrate employment or residential stability, and failed to complete parenting classes. *Record* at 33–35. Based on the evidence presented, the trial court found there was a reasonable probability that the continuation of the parent-child relationship posed a threat to Joseph's well-being. *Record* at 35. Smith has failed to show how having counsel at the CHINS proceeding would have enabled her to show a reasonable probability that she would have made "the necessary improvements that would result in permanent unification ..." with Joseph. *Matter of D.T.* (1989), Ind.App., 547 N.E.2d 278, 282.

The trial court did not abuse its discretion in failing to appoint counsel for Smith at the CHINS proceeding.

## III.

■ Smith was not denied her due process rights by signing the agreed entry. Once again, Smith has waived the issue because she did not raise it in a timely fashion. *See Rodgers, supra.*

The CHINS petition contained a very detailed statement of facts upon which the ne-

---

treatment of the child." IC 31–6–5–4. (Emphasis supplied).

**3.** To the contrary, Smith testified at the October 19, 1992 termination hearing that she had been employed at several restaurants, grocery stores, and other businesses since February 7, 1991.

glect allegations were made. *Record* at 205–06. The February 21, 1991 order states that Smith was advised of the allegations in the petition along with her rights and various dispositional alternatives. *See* appellee's appendix at 7–10. Smith understood she had a right to obtain counsel because she requested a continuance to retain an attorney. Appellee's appendix at 8. When Smith signed the agreed entry, the trial court verified that she understood she was agreeing that Joseph was a CHINS, agreeing to placement of Joseph with his aunt, and agreeing that she would participate in various services offered by the DPW. Appellant's appendix at 5–6.

At the subsequent termination hearing, Smith stipulated that Joseph was a CHINS. Smith also knew that this admission, through the agreed entry, could lead to a termination of her parental rights inasmuch as she signed an advisement form which so provided. Appellee's appendix at 10.

■ A party's stipulation conceding the truthfulness of some alleged fact is an admission in which the other party need not offer any evidence to prove that fact. The party who stipulates to such a fact is also not permitted to disprove that fact. *Schreiber v. Rickert* (1943), 114 Ind.App. 55, 50 N.E.2d 879. At the outset of the termination proceeding, Smith's court-appointed counsel stipulated that Smith was admitting to the CHINS petition. *Record* at 58. Smith was made aware of her rights and the consequences of an adjudication by the rights form that she signed.

The record demonstrates that Smith received all the rights afforded her by federal and state law in both the CHINS and termination proceedings. Smith has waived any error regarding a right to counsel at the CHINS proceeding, and she has failed to show how she has been harmed by not having counsel present during the CHINS hearing.

Judgment affirmed.

KIRSCH, J., concurs.

SULLIVAN, J., concurs with separate opinion.

SULLIVAN, Justice, concurring.

I agree that termination of Smith's parental rights was not erroneous. I write separately, however, in order to state that under some circumstances it might constitute an abuse of discretion for a CHINS court to fail to appoint counsel for an indigent parent.

The majority here holds: "The absence of counsel at the CHINS proceeding had no bearing on the evidence that was presented at the termination hearing." Op. at 1144. This conclusion is somewhat misleading. It focuses upon failure of visitation, non-participation in counseling and parenting sessions, and instability of residence and employment. These factors then prompt the court to validate the trial court's determination that continuation of the parent-child relationship posed a threat to the child's well being. While these determinations are factually supported, they do not necessarily support the conclusion that Smith was not adversely affected by the absence of counsel at the CHINS stage.

It must be kept in mind that several of the allegations which led to the CHINS determination were extremely damaging to Smith's parental relationship, i.e., that Smith participated in a child selling scheme, that she was an alcoholic, a heavy drug user and was a participant in nearly fifty robberies. The fact that Smith's agreed entry specifically admitted only that the child was in need of services and did not specifically admit or deny the damaging accusations does not dispel the strong probability that the allegations may have had some bearing upon the ultimate termination judgment. Had counsel been present at the CHINS stage those allegations or some of them might have been contested.

The termination stage in large measure depends upon preceding events. Most importantly, for cases of this nature, is the requirement that the court must conclude that the "reasons for the [CHINS] removal.... will not be remedied." Op. at 1147. Thus, we cannot say with any degree of assurance that the trial court in making its decision focused only upon the relatively innocuous factors emphasized by the majority opinion.

This case could well have provided the basis for enunciation of a prospective rule establishing that in some circumstances a parent might have a right to appointed counsel. If lack of counsel is likely to lead to particularly damaging uncontested allegations and if such allegations be deemed established and not subject to subsequent challenge, those allegations might virtually assure a subsequent termination decision. In such situations the trial court might well abuse its discretion by failing to appoint counsel for an indigent parent.[1]

Be that as it may, in the present case, affirmance is appropriate. Even though Smith may have been qualifiedly entitled to counsel had she so requested, her attorney at termination did not attack the agreed CHINS entry or request that the allegations of the CHINS petition be reestablished by evidence. Neither does Smith, on appeal, challenge the validity of those assertions.

Subject to these observations, I concur.

---

1. In this context, I find fault with that portion of the written advisement form which instructs parents of alleged CHINS children that: "You may obtain legal counsel for all proceedings although there is no right to a free court appointed attorney." Appellee's Appendix at 10. This advisement is misleadingly inflexible and permits of no exception notwithstanding the clear proviso of I.C. 31–6–7–2 which contemplates discretionary appointment of counsel. This advisement should be deleted from the written form and replaced by a more accurate statement of the rights of parents.