**In the Matter of the Termination of the Parent–Child Relationship of A.M.H., a child, C.D.H., a child, and T.A.H., a child, and LeAnn Hicks, the mother.**

No. 42A01–9912–JV–443.

Court of Appeals of Indiana.

Aug. 15, 2000.

Robert D. Lewis, Lewis & Miller, Vincennes, Indiana, Attorney for Appellant.

Joe D. Black, Ramsey & Black, Vincennes, Indiana, Attorney for Appellee.

## OPINION

MATTINGLY, Judge

The Knox County Office of Family and Children ("OFC") appeals the trial court's dismissal of the OFC's petition for the voluntary termination of the parent-child relationship of LeAnn Marie Hicks and her three children. Hicks signed in the presence of an OFC case manager documents that purported to voluntarily relinquish Hicks' parental rights. The trial court determined Hicks was denied due process of law[1] when the OFC knew Hicks was represented by counsel in a pending CHINS proceeding but prepared the forms and provided them to her to sign without advising Hicks' counsel.

We affirm.

### FACTS

Hicks has three children, ages seven, six, and five, all of whom were removed from Hicks' custody and placed in foster care in August of 1995 following a determination they were children in need of services ("CHINS"). Hicks was represented by counsel during the pendency of the CHINS proceeding, and the OFC's family case manager was aware that Hicks had counsel in the CHINS proceeding. Hicks was given the right while the CHINS proceeding was pending to have supervised visitation with the children at the OFC office for one hour each week. She exer-

cised her visitation right on December 19, 1997, and during a meeting with the family case manager, Hicks signed a Voluntary Relinquishment of Parental Rights, a Consent for Adoption, and a Waiver of Notice of Hearing.

The forms were executed in the presence of the case manager, who knew Hicks was represented by counsel in the pending CHINS proceeding but did not contact counsel before she allowed Hicks to sign the forms. The case manager knew Hicks was easily influenced. Hicks subsequently sought to withdraw her relinquishment of her parental rights, and after a hearing the trial court dismissed the OFC's petition for voluntary termination of the parent-child relationship.

### DISCUSSION AND DECISION

■ The right of a parent to make a home and raise her child is constitutionally protected. *Shaw v. Shelby County Dep't of Pub. Welfare*, 584 N.E.2d 595, 601 (Ind. Ct.App.1992). Accordingly, an enhanced right to counsel in proceedings to terminate the parent-child relationship is recognized by statute, *e.g.*, Ind.Code § 31–35–1–12, and case law, *e.g.*, *In re Petition of McClure*, 549 N.E.2d 392, 394 (Ind.Ct.App. 1990).

We noted in *Smith v. Marion County Dep't of Pub. Welfare*, 635 N.E.2d 1144,

---

1. The trial court's dismissal of the OFC's petition was premised solely on the due process violation, and the court explicitly found there was no evidence Hicks' signature on the voluntary relinquishment of parental rights form was obtained by fraud, duress, or undue influence. Still, the bulk of the OFC's brief is devoted to an argument that dismissal of the petition was improper because there was no evidence of fraud, duress, or undue influence. The OFC relies on our statement in *Snyder v. Shelby County Dep't of Pub. Welfare*, 418 N.E.2d 1171, 1180 (Ind.Ct.App.1981), that "a parent who executes a voluntary relinquishment of parental rights is bound by the consequences of such action, unless the relinquishment was procured by fraud, undue influence, duress, or other consent-vitiating factors." We must decline the OFC's invitation to hold

that a denial of due process in a parental rights termination proceeding is never error unless accompanied by fraud, duress, or undue influence.

We further note the trial court had evidence before it that the OFC had been asking Hicks for at least two months before she signed the document at issue here to voluntarily terminate her parental rights and that Hicks 1) had diminished mental capacity, 2) had a history of psychological problems, drug and alcohol abuse, and depression, 3) was quite easily influenced, and 4) may not have understood the words used in the consent form. In light of this evidence, we would not have characterized as clearly erroneous a trial court determination that Hicks' action was procured by "consent-vitiating" factors.

1149 (Ind.Ct.App.1994), that a parent's interest in the liberty of her child is a fundamental one, and permanently removing a child from an indigent parent without affording the parent the right to assistance of court-appointed counsel may be a denial of due process. In *Smith* we determined a trial court did not abuse its discretion when it declined to appoint counsel for a mother in a CHINS proceeding because a CHINS proceeding, unlike Hicks' purported voluntary relinquishment of her parental rights, "does not *automatically* contemplate a termination of parental rights." *Id.*

■ Furthermore, while termination proceedings are civil in nature, procedural due process requires departments of public welfare to prove the statutory requisites for termination of a parent-child relationship by clear and convincing evidence — a standard considerably higher than the "more likely than not" implications of the preponderance of the evidence standard typically applied in civil cases. *In re Wardship of R.B.*, 615 N.E.2d 494, 497 (Ind.Ct.App.1993).

More specifically, our supreme court has addressed in both the civil and criminal contexts the importance of notice to counsel when one party knows the other party is represented. For example, in *Kern v. State*, 426 N.E.2d 385, 387 (Ind.1981), the court addressed a defendant's claim that his confession was involuntary because police knew the defendant was represented by counsel but did not notify counsel of the defendant's interrogation. The court determined the confession was voluntary and that the defendant had knowingly waived his right to have counsel present at the interrogation. The court noted, however, that "although not *per se* impermissible, we do not approve of the practice of custodial interrogation without prior notice to counsel. Without it, the accused's right to effective representation may be jeopardized." *Id.* It further stated that notice or lack thereof to a defendant's attorney that an interrogation is about to commence is an "important fact that should be considered by the trial court with a critical eye" in determining the voluntariness of a statement. *Id.*

Our supreme court addressed the importance of notice to counsel in *Smith v. Johnston*, 711 N.E.2d 1259 (Ind.1999), where it held that a default judgment must be set aside for misconduct when a plaintiff's attorney filed suit and pursued a default judgment without notifying the attorneys she knew were representing the defendant in the matter. The court found that even though the trial rules do not require notice service on an attorney, a plaintiff's knowledge that the defendant is represented by counsel "gives rise to a corresponding duty under the Rules of Professional Conduct to provide notice before seeking any relief from the court." *Id.* at 1263.

■ We appreciate that Hicks' purported voluntary relinquishment of her parental rights does not carry with it the same right to counsel as does the interrogation of a criminal defendant, and we acknowledge that the record does not reflect that the OFC caseworker who presented the document to Hicks is an attorney subject to the Professional Conduct Rules. However, in light of the general importance of notice to counsel for a represented party and the substantial due process implications of proceedings to terminate parental rights, we cannot say the trial court erred when it decided Hicks was denied due process of law when a caseworker who knew Hicks was represented by counsel, was of limited intelligence, and was easily influenced, nonetheless, without ensuring that Hicks' counsel was notified, prepared and provided forms to Hicks whereby Hicks purported to voluntarily relinquish her rights to her children.

We affirm.

DARDEN, J., and BROOK, J., concur.