**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Feb 06 2013, 9:21 am

Kevin S. Smith

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**AMY KAROZOS**
Greenwood, Indiana

ATTORNEYS FOR APPELLEE:

**PATRICK M. RHODES**
Indiana Department of Child Services
Indianapolis, Indiana

**ROBERT J. HENKE**
DCS Central Administration
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE TERMINATION | ) | |
| OF THE PARENT-CHILD RELATIONSHIP OF: | ) | |
| D.T. (MINOR CHILD), AND A.M., (MOTHER), | ) | |
|     Appellant-Respondent, | ) | |
| | ) | |
|         vs. | ) | No. 49A05-1206-JT-285 |
| | ) | |
| THE INDIANA DEPARTMENT OF CHILD | ) | |
| SERVICES, | ) | |
|     Appellee-Petitioner. | ) | |

APPEAL FROM THE MARION SUPERIOR JUVENILE COURT
The Honorable Marilyn A. Moores, Judge
The Honorable Larry E. Bradley, Magistrate
Cause No. 49D09-1112-JT-46518

**February 6, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

## Case Summary

A.M. ("Mother") appeals an order terminating her parental rights to D.T. ("Child") upon the petition of the Marion County Department of Child Services ("DCS"). We affirm.

## Issue

Mother presents two issues for our review, which we restate as:

I. Whether DCS established, by clear and convincing evidence, the requisite statutory elements to support the termination of Mother's parental rights; and

II. Whether Mother's due process rights were violated.

## Facts and Procedural History

Child was born on April 13, 2010 to A.M. and M.T. ("Father") (collectively "Parents"). On June 12, 2010, Indianapolis Metropolitan Police Department Officer Daniel Disney ("Officer Disney") and Officer Wallace responded to a domestic disturbance complaint involving Mother and Father. Mother and Child were standing outside in the rain, and Child appeared cold and was without clothing, except for a blanket being used as a diaper.

Mother first informed Officer Disney that Father had struck Child and that Child had then vomited. However, Mother later retracted that explanation, and became defiant, agitated, and erratic when emergency medical personnel arrived. Mother disappeared, and the officers knocked on the door of the family residence, at which point Father, who was extremely intoxicated, let them enter and look around. Officer Disney observed that the home lacked furnishings, and the officers could find no diapers or baby food. Father did not ask about Child, only stating that he did not harm him. After the officers left the residence

2

and were unable to find Mother in the surrounding area, Child was admitted to Riley Hospital for Children.

A Child in Need of Services ("CHINS") petition was filed on June 15, 2010, and D.T. was removed from Parents' care and placed in foster care based on Child's unexplained skull fracture and Parents' lack of food and clothing for Child. At a fact finding hearing on December 20, 2010, Mother admitted that Child was a CHINS. At a dispositional hearing on February 9, 2011, the trial court ordered, in part, that Mother: contact the caseworker on a weekly basis; obtain suitable housing and a stable source of income; participate in and successfully complete home-based counseling; successfully complete any recommendations of the home-based counselor; participate in a domestic violence program; and visit Child on a consistent, regular basis. The CHINS permanency plan was stated as reunification with Parents until a permanency hearing on November 23, 2011, at which time the trial court ordered the permanency plan changed to termination of parental rights and adoption.

On December 7, 2011, DCS filed a petition to terminate Parents' rights as to Child, and on May 4, 2012, the trial court conducted an evidentiary hearing. On May 10, 2012, the trial court issued its Findings of Fact and Order terminating Parents' rights as to Child.

Mother now appeals.[1]

**Discussion and Decision**

<u>Termination of Parental Rights</u>

*Standard of Review*

---

[1] Father does not appeal the termination of his parental rights.

3

Our standard of review is highly deferential in cases concerning the termination of parental rights. In re K.S., 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). We will not set aside the trial court's judgment terminating a parent-child relationship unless it is clearly erroneous. In re A.A.C., 682 N.E.2d 542, 544 (Ind. Ct. App. 1997). When reviewing the sufficiency of the evidence to support a judgment of involuntary termination of a parent-child relationship, we neither reweigh the evidence nor judge the credibility of the witnesses. Id. We consider only the evidence that supports the judgment and the reasonable inferences to be drawn therefrom. Id.

*Requirements for Involuntary Termination of Parental Rights*

Parental rights are of a constitutional dimension, but the law provides for the termination of those rights when the parents are unable or unwilling to meet their parental responsibilities. See Bester v. Lake Cnty. Office of Family & Children, 839 N.E.2d 143, 147 (Ind. 2005). The purpose of terminating parental rights is not to punish the parents, but to protect their children. In re L.S., 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), trans. denied.

Indiana Code section 31-35-2-4(b)(2) sets out the elements that DCS must allege and prove by clear and convincing evidence in order to terminate a parent-child relationship:

(A) that one (1) of the following is true:

    (i)    The child has been removed from the parent for at least six (6) months under a dispositional decree.

    (ii)    A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

    (iii)    The child has been removed from the parent and has been under

the supervision of a county office of family and children or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2) (2010).[2] If the court finds that the allegations in a petition described above are true, the court shall terminate the parent-child relationship. I.C. § 31-35-2-8(a) (2010).[3] A trial court must judge a parent's fitness to care for his or her child at the time of the termination hearing, taking into consideration evidence of changed conditions. In re J.T., 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), trans. denied. The trial court also must "evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child." Id.

---

[2] The section was modified, effective July 1, 2012. We refer to the version of the statute in force at the time of the proceedings at issue.

[3] The section was modified, effective July 1, 2012. We refer to the version of the statute in force at the time of the proceedings at issue.

*Analysis*

Mother challenges the termination of her parental rights, arguing only that it was premature for the trial court to find under section 31-35-2-4(b)(2)(B)(i) that there was a reasonable probability that the conditions that led to the CHINS adjudication and disposition would not be remedied, without giving her an opportunity to remedy them. Section 31-35-2-4(b)(2)(B) is written in the disjunctive, and therefore the trial court needed to find only that one of the three requirements of section 31-35-2-4(b)(2)(B) had been established by clear and convincing evidence. See L.S., 717 N.E.2d at 209.

Here, the trial court entered findings under both sections 31-35-2-4(b)(2)(B)(i) (reasonable probability conditions will not be remedied) and (B)(ii) (reasonable probability of threat to well-being of Child). (App. at 14.) Because Mother challenges only the trial court's determination relating to sub-section (B)(i) (reasonable probability conditions will not be remedied), not sub-section (B)(ii) (reasonable probability of threat to well-being of Child), she effectively waives her argument challenging the trial court's determination pursuant to section 31-35-2-4(b)(2). See Ind. Appellate Rule 46(A)(8)(a).

Moreover, we disagree with Mother's assertion that DCS failed to establish, by clear and convincing evidence, that there was a reasonable probability that the conditions that led to the CHINS adjudication and disposition would not be remedied.

Here, the evidence most favorable to the judgment discloses a substantial probability of future neglect or deprivation of Child. See J.T., 742 N.E.2d at 512. As of the termination hearing, Mother's living situation had been chaotic for six years, and she had resided in five

6

states. (Tr. at 151-52.) She had no permanent living arrangements, and had been residing in transitional housing since January 2012. (Tr. at 172, 307.) She had been unemployed since 2006. (Tr. at 339.) She had completed domestic violence classes, but thereafter continued to live on and off with her abuser. (Tr. at 177; DCS Ex. 16.)

A home-based caseworker testified that Mother displayed a lack of knowledge as to Child's behaviors, had "inappropriate expectations" of Child, and considered his normal child-like behavior to be "bad." (Tr. at 95, 104-05.) The caseworker and a volunteer court appointed special advocate ("CASA") testified that Mother was detached from Child, would not comfort him when he cried, and focused more on his infant sibling. (Tr. at 105, 115, 263-64, 269, 288.) They also testified that Mother would act out angrily if given advice on how to care for Child or how to avoid hurting him, and she did not or could not benefit from any education or redirection offered her concerning Child. (Tr. at 95-97, 113, 133-34, 268-69, 287.)

Furthermore, Mother appeared delusional and would exaggerate circumstances. (Tr. at 97-98, 269.) She had a personality and delusional disorder, was unable to stay focused, was tangential, and often "in her own world." (Tr. at 147-48.) She seemed aloof, confused, and inconsistent, and had a "hard time staying grounded in reality." (Tr. at 99-100, 131-32, 150.) According to Mother's therapist, Mother may need several years of counseling in order to develop a stable lifestyle. (Tr. at 152-53.)

DCS presented clear and convincing evidence from which the trial court could conclude that there was a reasonable probability that the conditions that led to the CHINS

adjudication and disposition would not be remedied.

## Due Process Rights

Mother next contends that the trial court's decision to terminate her parental rights should be reversed because of alleged procedural irregularities in the CHINS proceedings. Specifically, she complains that: (1) DCS failed to make reasonable efforts to reunify the family under Indiana Code section 31-34-21-5.5 when it failed to refer her for parenting counseling and individual psychotherapy services it deemed necessary; and (2) DCS failed to inform her that her failure to get the necessary services would jeopardize her parental rights. Mother claims that those irregularities deprived her of procedural due process, thus rendering the termination decision void.

When the State seeks the termination of a parent-child relationship, it must do so in a manner that meets the requirements of the Due Process Clause. Hite v. Vanderburgh Cnty. Office of Family and Children, 845 N.E.2d 175, 181 (Ind. Ct. App. 2006) (referring to U.S. Const. amend. XIV). The parent must be afforded the opportunity to be heard at a meaningful time and in a meaningful manner. Id. Due process in parental rights cases involves the balancing of three factors: (1) the private interests affected by the proceeding; (2) the risk of error created by the State's chosen procedure; and (3) the countervailing government interest supporting the use of the challenged procedure. Id.

Here, Mother's private interest in the care, custody, and control of her children is a fundamental liberty interest, and thus is substantial. See id. The government's interest is also substantial, as the State of Indiana has a compelling interest in protecting the welfare of

8

its children. Id.

It is well established, however, that a party on appeal may waive a constitutional claim. McBride v. Monroe Cnty. Office of Family and Children, 798 N.E.2d 185, 194 (Ind. Ct. App. 2003) (citing K.S., 750 N.E.2d at 834 n. 1; Smith v. Marion Cnty. Dep't of Pub. Welfare, 635 N.E.2d 1144, 1148 (Ind. Ct. App. 1994), trans. denied).

Here, Mother fails to direct us to any instance in the record where she objected during the CHINS proceedings to the alleged deficiencies in the CHINS process, or where she argued during the termination proceedings that those alleged deficiencies constituted a due process violation. At most, Mother's counsel, in closing argument, asserted that DCS's failure to provide services should lead the trial court to deny the termination of her parental rights. As such, she has raised her procedural due process claim for the first time on appeal, and she has waived her constitutional challenge. See McBride, 798 N.E.2d at 194-95.

Moreover, we disagree with her argument that procedural irregularities deprived her of procedural due process, thus rendering the termination decision void.

Procedural irregularities in CHINS proceedings may be so significant that they deprive a parent of procedural due process with respect to the termination of her parental rights. A.P. v. Porter Cnty. Office of Family and Children, 734 N.E.2d 1107, 1112-13 (Ind. Ct. App. 2000), trans. denied. Here, however, Mother independently obtained the required parenting counseling and individual psychotherapy services. On January 10, 2012, she moved to the Coburn Place, a transitional apartment complex for victims of domestic violence. (Tr. at 307-08.) There, she received parenting counseling (Tr. at 136-37) and

9

individual psychotherapy services (Tr. at 212, 314-15).

Therefore, we cannot conclude that any lack of specific referral to services deprived Mother of procedural due process with respect to the termination of her parental rights. Moreover, the record, including DCS's request in a written petition that the trial court advise Mother that her failure to participate as required by the Participation Order could lead to the termination of her parent-child relationship (DCS Ex. 10), belies Mother's assertion that she lacked actual knowledge that reunification depended on compliance with the Participation Order.

## Conclusion

DCS established by clear and convincing evidence the requisite elements to support the termination of parental rights. Mother was not deprived of procedural due process with respect to the termination of her parental rights.

Affirmed.

VAIDIK, J., and BROWN, J., concur.

10