# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 24 2020, 9:00 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Roberta L. Renbarger
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of J.S. (Child) and R.B. (Father);

R.B. (Father),
*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner*

July 24, 2020

Court of Appeals Case No.
20A-JT-491

Appeal from the Allen Superior Court

The Honorable Charles F. Pratt, Judge

The Honorable Lori K. Morgan, Magistrate

Trial Court Cause No.
02D08-1906-JT-321

**May, Judge.**

[1] R.B. ("Father") appeals the involuntary termination of his parental rights to J.S. ("Child"). Father argues the trial court violated his due process rights when it denied his motion to dismiss the Department of Child Services' ("DCS") petition to terminate his parental rights. We affirm.

## Facts and Procedural History

[2] B.S. ("Mother")[1] gave birth to J.S. on January 29, 2018. On March 12, 2018, DCS removed Child and his older sister, A.B. ("Sister"),[2] from Mother and Father's care based on their living situation and use of illegal substances. On July 11, 2018, the trial court adjudicated Child and Sister as Children in Need of Services ("CHINS") because "at the time of [C]hild's birth, [Mother and Father] were residing in a two-bed hotel room with another couple . . . [and] since that time, [Mother and Father] had resided in three different motels." (App. Vol. II at 10.) Father admitted that he "was unemployed and without stable housing and that he was unable to provide [Child] with an environment free from illegal substances." (*Id.* at 11.) The trial court entered its dispositional order on September 4, 2018, requiring Father to, among other things, refrain from all criminal activity, maintain stable housing, notify DCS within forty-eight hours of any change in address, cooperate with caseworkers,

---

[1] Mother's parental rights to Child were also terminated but she does not participate in this appeal.

[2] Mother and Father voluntarily relinquished their parental rights to Sister during a hearing on September 4, 2018.

obtain a drug and alcohol assessment and follow all recommendations, engage in home-based services, obtain a psychological evaluation and follow all recommendations, submit to random drug and alcohol screens, and visit with Child.

[3] Father did not complete services as ordered. He did not regularly submit to drug screens, did not complete his psychological evaluation, and "had a number of outbursts" during visitation with Child. (*Id*. at 12.) On February 21, 2019, the trial court held a permanency hearing during which Father was present. The trial court changed Child's permanency plan from reunification to termination and adoption. The trial court ordered Father to be present at the next review hearing on August 20, 2019. On July 17, 2019, DCS filed its petition to terminate parental rights based on non-compliance with services.

[4] The trial court scheduled the initial hearing on the termination petition for August 20, 2019. On August 8, 2019, DCS filed an affidavit of non-service because Father was no longer living at the last address he gave to DCS. At the August 20, 2019, hearing, Father's attorney appeared but Father did not. The trial court continued the initial hearing to September 23, 2019. On September 19, 2019, DCS filed an affidavit indicating that, after a diligent search, it could not locate Father, and asking the trial court's permission to serve Father by publication. The trial court granted the request. On September 23, 2019, the trial court attempted to hold an initial hearing, but Father again was not present, though his counsel was in court.

[5]     On November 4, 2019, DCS filed proof it had served Father via publication. The trial court held a case management conference on December 10, 2019, and Father's counsel was present. On December 16, 2019, the trial court held a fact-finding hearing on the termination petition. Father's counsel was present, but Father was not. Father's counsel moved to dismiss the termination petition because the trial court had not held an initial hearing in the matter within ninety days of DCS's filing of the petition as required by Indiana Code section 31-35-2-6(a)(1). The trial court denied that motion and held the hearing as scheduled. The trial court held an additional fact-finding hearing on December 17, 2019, and Father was again absent. On February 7, 2020, the trial court terminated Father's parental rights to Child.

# Discussion and Decision

[6]     We review termination of parental rights with great deference. *In re K.S.*, 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). We will not reweigh evidence or judge credibility of witnesses. *In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences most favorable to the judgment. *Id*. In deference to the juvenile court's unique position to assess the evidence, we will set aside a judgment terminating a parent's rights only if it is clearly erroneous. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *reh'g denied*, *trans. denied*, *cert. denied* 534 U.S. 1161 (2002).

[7]     "The traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *In*

*re M.B.*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*.  A trial court must subordinate the interests of the parents to those of the children when evaluating the circumstances surrounding a termination.  *In re K.S.*, 750 N.E.2d at 837. The right to raise one's own children should not be terminated solely because there is a better home available for the children, *id.*, but parental rights may be terminated when a parent is unable or unwilling to meet parental responsibilities.  *Id.* at 836.

To terminate a parent-child relationship, the State must allege and prove:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>>
>> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). The State must provide clear and convincing proof of these allegations. *In re G.Y.*, 904 N.E.2d 1257, 1260-61 (Ind. 2009), *reh'g denied*. If the court finds the allegations in the petition are true, it must terminate the parent-child relationship. Ind. Code § 31-35-2-8.

[9] In a termination of parental rights proceeding, parents have certain due process rights:

> When a State seeks to terminate the parent-child relationship, it must do so in a manner that meets the requirements of the due process clause. *Santosky v. Kramer*, 455 U.S. 745, 102 S. Ct. 1388, 71 L.Ed.2d 599 (1982). Although due process has never been precisely defined, the phrase embodies a requirement of "fundamental fairness." *E.P. v. Marion County Office of Family & Children*, 653 N.E.2d 1026, 1031 (Ind. Ct. App. 1995) (quoting *Lassiter v. Dep't of Social Servs.*, 452 U.S. 18, 26, 101 S. Ct. 2153, 68 L.Ed.2d 640 (1981)). Citing *Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L.Ed.2d 18 (1976), this court has recently acknowledged that the nature of the process due in parental rights termination proceedings turns on a balancing of three factors: (1) the private interests affected by the proceeding, (2) the risk of error created by the State's chosen procedure, and (3) the countervailing governmental interest supporting use of the challenged procedure. *A.P. v. Porter County Office of Family and Children*, 734 N.E.2d 1107 (Ind. Ct. App. 2000)[, *reh'g denied*].

*J.T. v. Marion Cty. Office of Family & Children*, 740 N.E.2d 1261, 1264 (Ind. Ct. App. 2000), *reh'g denied, trans. denied, abrogated on other grounds by Baker v. Marion Cty. Office of Family & Children*, 810 N.E.2d 1035, 1041 (Ind. 2004) (regarding effectiveness of trial counsel in a termination proceeding). Father argues the trial court violated his due process rights when it denied his motion to dismiss

based on DCS's alleged non-compliance with Indiana Code section 31-35-2-6(a)(1).

[10] Indiana Code section 31-35-2-6, which governs requests for hearings after DCS has filed a petition for the termination of parental rights, states:

> (a) Except when a hearing is required after June 30, 1999, under section 4.5 of this chapter, the person filing the petition shall request the court to set the petition for a hearing. Whenever a hearing is requested under this chapter, the court shall:
>
>> (1) commence a hearing on the petition not more than ninety (90) days after a petition is filed under this chapter; and
>
>> (2) complete a hearing on the petition not more than one hundred eighty (180) days after a petition is filed under this chapter.
>
> (b) If a hearing is not held within the time set forth in subsection (a), upon filing a motion with the court by a party, the court shall dismiss the petition to terminate the parent-child relationship without prejudice.

DCS filed its petition to terminate Mother and Father's parental rights to Child on July 17, 2019. The trial court scheduled initial hearings for August 20, and September 23, 2019, but those hearings did not occur because DCS could not find Father to serve him with notice of the hearings. DCS served Father via publication as of November 4, 2019. At a case management hearing on December 10, 2019, the trial court decided to hold the initial hearing as part of

the first day of the fact-finding hearing.  The trial court held fact-finding hearings on the termination petition on December 16 and 17, 2019.  Father's counsel orally moved to dismiss the termination petition based on non-compliance with Indiana Code section 31-35-2-6(a)(1) because the trial court failed to hold an initial hearing within ninety days of when DCS filed its petition to terminate Father's rights to Child.

[11]    In denying counsels' motions to dismiss, the trial court stated:

> I believe the Court set the [initial] hearing because I didn't see a written request or motion by the Department to actually set the matter for an Initial Hearing I believe the Court set that matter for an Initial Hearing on its own I don't – I'll – I can look through the chronological case summary but I don't see a written motion for a hearing I'll look in Quest and see but – and you can look along with me you're certainly welcome to do that [clears throat] and there is a case that says – and this is Newby versus Boone County Division of Family and Children 799 N.E.2d 63 it's an Indiana Court of Appeals decision it says contrary to New – Newby's this was heard in 03 assertions on appeal Indiana law does not mandate that a hearing be held within 90 days after a termination petition is filed in fact [coughing] Indiana law does not impose any specific time requirement for the setting of an Initial Hearing or Factfinding Hearing unless a party specifically requests a hearing see Indiana Code § 31-35-2-6 only after a party specifically requests a hearing does a 90-day – does a 90-day deadline for the commencement of a hearing become applicable and again that cites the code [coughing] and I don't see a record of any party requesting [a hearing]. . . so the Oral Motion to Dismiss is denied[.]

(Tr. Vol. II at 50-1) (errors in original).  As a preliminary matter, we note that the trial court's reliance on *Newby v. Boone County Division of Family and Children*, 799 N.E.2d 63 (Ind. Ct. App. 2003), is misplaced because the opinion in *Newby* was based on a prior version of Indiana Code section 31-35-2-6.  When our court decided *Newby* in 2003, the statute read:

> Except when a hearing is required after June 30, 1999, under section 4.5 of this chapter, the person filing the petition *may* request the court to set the petition for a hearing.  Whenever a hearing is requested under this chapter, the court shall commence a hearing on the petition not more than ninety (90) days after a petition is filed under this chapter.

Ind. Code § 31-35-2-6 (1998) (emphasis added).  However, the statute has been revised and now reads, in relevant part:

> (a) Except when a hearing is required after June 30, 1999, under section 4.5 of this chapter, the person filing the petition *shall* request the court to set the petition for a hearing.  Whenever a hearing is requested under this chapter, the court shall:
>
> > (1) commence a hearing on the petition not more than ninety (90) days after a petition if filed under this chapter;

Ind. Code § 31-35-2-6(a)(1) (2012) (emphasis added).  Thus, the revision now requires that DCS request a hearing and the trial court is then required to schedule said hearing within ninety days.  *See, e.g., Robertson v. State*, 141 N.E.3d 1224, 1228 (Ind. 2020) (noting that the word "may" is "permissive language" and "shall" is "mandatory language[.]").  Therefore, under Indiana

Code section 31-35-2-6(a)(1), DCS did not request a hearing as required and thus the trial court did not hold a hearing.

When a trial court does not hold a hearing within the required time frame, the trial court shall dismiss the termination petition "upon filing a motion with the court by a party[.]" Ind. Code § 31-35-2-6(b). Here, Father's counsel made an oral, not a written, motion to dismiss during the December 16, 2019, hearing and thus did not comply with the requirements of Indiana Code section 31-35-2-6(b). *See Matter of N.C.*, 83 N.E.3d 1265, 1267 (Ind. Ct. App. 2017) (noting Indiana Code section 31-35-2-6(b) requires that a party file a written motion to dismiss based on non-compliance with statutory deadlines).[3]

[12] Further, Father's own conduct invited any error he now alleges. Invited error, which is based on the legal principle of estoppel, forbids a party from taking "'advantage of an error that she commits, invites, or which is the natural consequence of her own neglect or misconduct.'" *Durden v. State*, 99 N.E.3d 645, 651 (Ind. 2018) (quoting *Wright v. State*, 828 N.E.2d 904, 907 (Ind. 2005)). "A party may not invite error, then later argue that the error supports reversal, because error invited by the complaining party is not reversible error." *Booher v. State*, 773 N.E.2d 814, 823 (Ind. 2002). Here, the trial court ordered Father to

---

[3] Father also argues the trial court erred when it denied his motion to dismiss because DCS did not provide him notice of an initial hearing within ten days of the hearing date pursuant to Indiana Code section 31-35-2-6.5(b). However, Father did not make that argument before the trial court and thus it is waived. *See S.L. v. Indiana Dept. of Child Servs.*, 997 N.E.2d 1114, 1118 (Ind. Ct. App. 2013) (father may not make a due process argument for the first time on appeal and thus the argument is waived).

update DCS with any change in address within forty-eight hours of the change. He did not do so, which resulted in DCS being unable to find Father to serve him with notice and, thus, the delay about which he now complains.

[13] Finally, the evidence supporting the termination of Father's parental rights was overwhelming. Father does not challenge the trial court's findings and, thus, they stand proven. *See Madlem v. Arko*, 592 N.E.2d 686, 687 (Ind. 1992) ("Because Madlem does not challenge the findings of the trial court, they must be accepted as correct."). In terminating Father's parental rights to Child, the trial court found:

> [T]he Department of Child Services made a referral to Lifeline for the parents to participate in parenting instruction and to assist the parents with finding housing and employment as well as finding and utilizing community resources. The parents attended the first session on July 2, 2019, which was an intake session. [Mother] engaged in discussion with the Lifeline caseworker during the first session which lasted 1 1/2 hours, however, [Father] told the caseworker that he had somewhere to go. . . . [Father] did not attend the second appointment that had been scheduled but did attend two or three other appointments. He worked with the caseworker on finding employment and was able to find employment through Leader Staffing[,] a temporary employment agency and also received assistance from the caseworker on obtaining a replacement social security card and on obtaining food from a food pantry. From the testimony of Lifeline caseworker Zachary Hannan, the Court finds that during the time that the parents worked with him, they resided with friends. They were not interested in finding new or independent housing and did not initiate parenting skills training. The Lifeline referral was closed out for non-compliance on August 20, 2019.

As part of the Parent Participation Plans that were ordered by the Court and incorporated into the Dispositional Decree, the parents were ordered to obtain psychological evaluations and to comply with the recommendations from the psychological evaluations. . . . [Father] failed to complete his evaluation.

As part of the Parent Participation Plans that were ordered by the Court and incorporated into the Dispositional Decree, the parents were ordered to submit to drug and alcohol assessments and follow all recommendations from the assessments. From the testimony of family casemanager [sic] Jasmine Hamilton, the Court finds that the parents tested positive for illegal drugs at the time of [Child's] removal from the home and that their drug of choice was spice. There have been ongoing concerns about drug usage by the parents. . . . The parents did not regularly submit to drug screens conducted by the DCS or other agencies.

[Father] was ordered participate in medication management services and he failed to do so. From the testimony of the Guardian ad Litem, the Court finds that during the course of the proceedings, he had a number of outbursts and would use foul language and would leave the courthouse and or [sic] courtroom in a fit of anger. This type of behavior was witnessed by Zachary Hannan from Lifeline during the second visitation that occurred at the Allen County Public Library between the parents and children. The children and [M]other were inside during the visitation and [Father] was outside smoking a cigarette. The visitation supervisor went outside to encourage [Father] to join the visitation and [Father] began to curse and informed him that no one tells him what to do. He then refused to talk to the visitation supervisor and the visit was then cut short.

. . . [T]he parents last visited with [Child] in October of 2019.

. . . Throughout the course of the proceedings in the underlying CHINS case, the parents have been unable to maintain stable housing and employment. Referrals were made for their participation in services that were designed to assist them in remedying the reasons for removal of [Child] from the home and in remedying the continued placement of [Child] outside the home, however, they have failed to regularly participate and/or benefit from services provided. They do not have appropriate housing and have not demonstrated that they have the willness [sic] or ability to provide for [Child]. [Mother] and [Father] have failed to remedy the reasons for removal of [Child] from the home and the reasons for continued placement of [Child] from the home.

(App. Vol. II at 11-13.) Based thereon, we conclude the trial court did not err when it terminated Father's parental rights to Child. *See In re E.M.*, 4 N.E.3d 636, 644 (Ind. 2014) (termination of father's parental rights supported by father's continued non-compliance with services); *see also Smith v. Marion Cty. Dept. of Pub. Welfare*, 635 N.E.2d 1144, 1149 (Ind. Ct. App. 1994) ("One who seeks to disturb a trial court's judgment must affirmatively show an erroneous ruling and prejudice resulting therefrom."), *trans. denied*.

# Conclusion

[14] Despite the fact that DCS did not request, and the trial court did not hold, a hearing within ninety days of DCS's filing the petition to terminate Father's parental rights, the trial court did not err when it denied Father's motion to dismiss because his motion was not in writing as required by Indiana Code section 31-35-2-6(b). Further, Father has not demonstrated DCS and the trial

court's non-compliance with Indiana Code section 31-35-2-6(a)(1) prejudiced him or substantially affected his rights. Accordingly, we affirm the termination of Father's parental rights to Child.

[15] Affirmed.

Riley, J., and Altice, J., concur.